CARTER MACH. CO. v. HANES et al.

(Circuit Court, W. D. North Carolina. October 31, 1895.)

1. PATENTS—LIMITATION OF CLAIMS—COMBINATIONS.

The use of the words "substantially as described" in a combination claim is an express limitation, restricting the patentee to the peculiar and specific combination of elements and parts of which his machine is composed.

2. SAME—MECHANICAL EQUIVALENTS.

The inventor of a machine, consisting of a new combination of old and well-known elements, which is shown by experiment to be impracticable and valueless for the purpose intended, cannot, after obtaining a patent therefor, abandon his specifically described novel invention, and substitute, as a mechanical equivalent therefor, the methods of old machines which he claimed to have improved upon, and then sue as infringers persons employing the old device in the old way.

3. SAME—IMPROVEMENTS—COMBINATIONS.

Patents for mere improvements, consisting in combinations of old elements and ingredients, should be limited, by a strict construction of their claims and specifications, so as to leave the unappropriated field of the art open to other improvers.

4. SAME—MECHANICAL EQUIVALENTS.

In general, a mechanical equivalent which may be properly substituted for an omitted mechanical element, device, or agency in a patented machine is one that performs the same function by applying the same force to the same object, through the same mode and means of application. As applied to combination patents, it is special in its significance, and materially narrower in its range than when applied to an invention consisting of a new device or an entirely new machine.

5. SAME—TOBACCO FLAVORING MACHINE.

The King patent, No. 494,960, for an improvement in tobacco flavoring machines, is void for want of useful novelty, and as accomplishing no new and valuable result, and no old result in a better and cheaper manner.

This was a bill by the Carter Machine Company against P. H. Hanes & Co., for infringement of a patent relating to tobacco flavoring machines.

Peatross & Harris and W. D. Baldwin, for complainant.

Glenn & Manly, W. W. Fuller, and Watson & Buxton, for defendants.

DICK, District Judge. The complainant is conceded to be the duly constituted assignee of United States patent 494,960, issued to John M. King, on the 4th day of April, 1893. This suit in equity has been brought by complainant against defendants to obtain an injunction, and recover damages for an alleged infringement of the said patent now owned and controlled by complainant. On the 29th day of May, 1891, the assignor, John M. King, filed an application for this patent for the improvement in tobacco flavoring machines as described in claim and specification attached to his application. The claim and specification set forth a detailed and particular description of the machine, accompanied by drawings showing from three points of view the particular construction of his machine, and its means and manner of operation. The applicant thus gave notice to the patent office and the intelligent public interested in mechanism that he

claimed only an improvement in a combination of old and well-known elements that were employed in different arrangement in previous patents then existing or expired. His descriptions were so express and distinct that their meaning and scope could not be misunderstood by any one at all familiar with the combination and operation of similar machines. His application was rejected by the patent office June 9, 1891, because of anticipation by certain previous patents enumerated by the regular examiner of patent office. Amendments were made to application 5th of September, 1891, and again December 3, 1892, after which letters patent 494,960 were granted to applicant on 4th of April, 1893, after frequent and persistent efforts, with representations "that four thousand dollars has already been expended by the owner of this invention in building and developing the mechanism covered by claim, and the success of the combination has been such that others are copying it quite extensively," and upon the following earnest and specific request: "All applicant asks is to be given the benefit of the doubt, according to the rule laid down by the commissioner of patents in numerous cases." Before the patent was granted, there were interference proceedings between J. C. Frost and J. M. King; and upon the voluntary concession of Frost, and the urgent request of King, a decision was rendered in favor of King, and patent 494,960 was granted and issued. It appears that Frost had made application for a patent, and was the inventor and manufacturer of the machine which he had previously sold to defendants, and which is alleged in this suit to be an infringement upon the King machine. The decision of the patent office made upon such representations, under such circumstances, and after such long hesitation and delay, may well be subject to review in a court of equity, when the patentability of the invention and combination, the validity of the patent, and the question of infringement have become matters of controversy in a pending suit between litigant parties, and should only be recognized and observed when fully sustained by the evidence in the cause and the well-settled principles of equity. The decision of the patent office relied upon by complainant is certainly not conclusive against the defendants, who were in no sense parties or privies to the controversy in which the decision was rendered.

Other suits, similar to the one now before the court, have been brought by the complainant against other defendants, and, by agreement of counsel, they are to be determined by the decree in this cause. The counsel on both sides have enlightened the court by able and exhaustive oral arguments, upon the many questions of law and fact that they deemed involved; and they have filed elaborate printed briefs restating argument, calling my attention to material parts of evidence, and citing numerous authorities. Models of the respective machines have been furnished as exhibits, and, with the intelligent explanations of counsel, and the testimony of several expert witnesses, the court has been able, by inspection, to understand the purpose and manner of operation of said machines, and determine the matters in controversy between complainant and defendants. In this opinion I will not make citation of many au-

thorities, as the questions of law involved have been decided in numerous cases which can be readily found in digests of reports, and in the conveniently arranged indexes of text writers.

The machine employed by defendants is identical with that machine which the complainant claims to have the exclusive right to make and sell under the monopoly granted by the King patent. If the complainant has such exclusive right, then there is a clearly-established infringement by defendants, and the complainant is entitled to the full relief sought in its bill. The defendants insist by way of defense—First. That King's invention and combination were not patentable, because anticipated by several previous patents, to wit: Smith and Messenger patent 172,666, January 25, 1876, reissued June 27, 1876 (reissue patent 7,195); also, Smith and Messenger patent 187,187; the Bjick patent, 195,878, October 9, 1877; the Coleman patent; the Appleby patent; the Justus patent; and the Coker patent. Second. That the King patent, for invention, combination, and improvement as set forth in claim, specification, and drawings, and practically exhibited by model offered in evidence, has been proved by experiment to be impractical, useless, and worthless, and therefore void; that complainant has abandoned the use, manufacture, and sale of machines constructed in conformity to the claim, specifications, and drawings of the King patent, and has, without any just claim of right in law, substituted as an entirety the Frost machine employed by defendants, upon the ground that it is a mechanical equivalent of the machine described in the King patent; that the previous patents above referred to show that, at the time of the grant of the King patent, the mechanical elements and devices embraced in the King patent were well known to the art, and were employed in similar combination and arrangement for similar purposes, the only difference being the specific and peculiar manner of construction, arrangement, and application of old devices described by King in his claim, specification, and drawings as constituting the essence of his invention and improvement. They insist with much reason, force, and authority that the doctrine of mechanical equivalents does not apply to a patent for an unusual and peculiar combination of old elements often used in other combinations in similar, but not exact, arrangements, and the different arrangements claimed specifically as a novelty of useful invention. The counsel of defendants further insisted that King, at the time of his application, well knew the state of the art in relation to tobacco casing machines; that there was one previous patent in which the machines were fed by hand labor through the rear perforated end of an inclined cylinder, carrying the tobacco forward, by force of gravity and revolving motion, to the place where the material, properly prepared, received the flavoring spray from a nozzle in front of the outlet of the cylinder; that there was another patented machine of a similar character, in which the spray nozzle was located inside of the entrance end of the cylinder; that he well knew that he could not obtain a patent if he only arranged and applied these old devices to produce the same result, by same methods, differing only in degree of efficiency; and that he must arrange a combination

of these old elements which would produce new and useful results, or old results in a better and cheaper manner; that his evident intention was to produce an improvement by the organization of old elements for a new use and new material with better manner of operation, and that he had no expectation that he could remedy defects in his machine if demonstrated by experiment to be impracticable and useless,—by mechanical equivalents taken from the machines which he claimed to have so much improved upon as to be entitled to a patent; that he certainly believed that a hopper with automatic action to supply a machine with tobacco was a novelty, and an improvement upon the old method of feeding by hand labor, as used in previous machines, and that his specifically described nozzle, located within the drum, was a far better method of spraying tobacco than the spray nozzle employed in other machines; that King's firm belief in the novel and useful operation of his machine was not founded on mere conjecture and theory, as the complainant's evidence shows that in 1891, before obtaining a patent, he illustrated the novelty and utility of his invention by a half-sized working model, made in exact accordance with the specifications and drawings in his application for a patent, and the same was used successfully in Danville, Va., and so great was his confidence in the novelty and utility of his peculiarly constructed machine that he expended $4,000 in building and developing the machine covered by his claim, and the success of the combination it embraced had been such that others were copying it quite extensively; that such facts and circumstances were brought about by King, after full consideration, and with the persistent purpose of evading all previous patented combinations that were in the way of his obtaining a patent. The counsel of defendants therefore urgently insist that the principles of reason, law, and common justice require that King be strictly confined in a court of equity, when he seeks to enforce rights under a patent, to the express limitations imposed by himself when applying for a patent for a machine of his peculiar combination and construction. It is conceded that the King machine is not a pioneer invention, and is claimed only as an improvement upon previous machines employing similar devices, elements, and combinations.

The claim set forth in the application for the King patent, and specifically described in specifications illustrated by drawings is as follows:

"The combination of a tobacco flavoring machine, of a rotary flaring drum, provided with driving mechanism, a feed hopper emptying into the smaller end of the drum, and a spraying device located within the drum, whereby the tobacco is sprayed, and the leaves separated, as they pass through the drum, substantially as described."

The concluding phrase in the claim is an express and self-imposed limitation, which restricted the patentee to the peculiar and specific combination of the several old elements and parts of which his machine was composed, and which he had tested by experiment. The chief and obvious difference of the King machine from previously employed machines is a hopper, in the lower end of which is situated a feed roller, mounted upon a revolving shaft, intended, by automatic

action, to supply the machine with material through a spout passing into the flaring spray drum. The second obvious and specific difference is a flaring or funnel-shaped drum, with radial arms or spokes extending from a central revolving shaft, and secured at their outer ends to the inside of the drum, near the rear end, and in front of the feeding spout of the hopper. The third obvious and specific difference is a spray nozzle located within the drum on a line with the driving shaft, with a semi-circular series of orifices through which the flavoring liquid passes downward and sidewise upon the tobacco, agitated and opened by the revolving motion and appropriate devices within the spray drum. These orifices of the spray nozzle are closed by a flap valve, which is held down upon its seat by a spring to which it is secured, and is opened automatically by force of the liquid in the spray pipe when the machine is in operation. All of these elements, devices, and agencies are operated by means of mechanical appliances, "substantially as described." The hopper is a very old device in mechanism, and was originally employed to feed grain mills by automatic action. It was a very useful invention, as it supplied mechanical action to supersede hand labor. King fixed the meaning of the term "hopper" in his application for a patent for combination and improvement upon old hand-fed machines for casing tobacco, by describing and applying it as an "automatic feeding device." If the word "hopper" has the extensive signification claimed by the counsel and expert witness of complainant, it will extend to any kind of means and devices for feeding grain mills or other kinds of mills, and to all kinds of apertures to receptacles for storing grain or loose substances, whether by mechanical agency or hand labor. It will embrace many things, new and old, and make the rude primary methods of supply to machines equivalent to improved methods which have been invented and practically applied in the progress of the arts.

There was some novelty in the conception of King that an automatic hopper could be beneficially employed for feeding a casing machine with leaf tobacco, as it was the application of an old device to a new use and new materials; but experiment has shown that such device for such purpose is utterly valueless and impracticable. Surely, the inventor of such new use of an old device cannot, after obtaining a patent, abandon his specifically described novel invention, and substitute as a mechanical equivalent the methods of the old machines which he claimed to have improved upon, and sue as infringers persons who employed the old device in the old way. The conical cylinder is an old device in the arts, but, in the claim and specifications of the King patent, it has the novelty of axial arms or spokes radiating from the interior driving shaft in the rear part of the flaring drum, in front of the feed spout of the hopper. This novelty of arrangement is evidently calculated to obstruct and tangle the leaf tobacco as it passes from the feed spout into the spraying chamber of the drum; thus, in some degree, defeating the satisfactory accomplishment of the result intended and achieved by previous machines. The spray nozzle is an old device in the arts, but it has some novelty in its peculiar location and manner of operation in the King machine, which is by no means an improvement upon similar methods em-

ployed in other old machines. It is obvious that a considerable portion of the spray would not reach the tobacco in the place to which it is carried by the revolving motion of the machine. If this spray nozzle, with its peculiar construction and manner of operation, was placed outside and in front of the drum, all of the spray would be wasted.

From consideration of the description of the King machine set forth in his claim, specifications, and drawings, and practically illustrated by the model exhibited in evidence, together with the well-established fact that this peculiar machine has never been manufactured for sale and use, but has been abandoned by complainant, the court needs not the assistance of the testimony of the expert witnesses in reaching the conclusion that such a combination of old elements and devices was not patentable; and the patent granted after previous rejection of application, and only granted to give applicant the benefit of a doubt, was invalid. The patent is not invalid upon the ground of a want of novelty,—for it has some novelty of conception and arrangement,—but for the want of useful novelty and practical benefit in the art, in accomplishing a new and valuable result, or an old result in a better and cheaper manner. It does not and cannot be made to accomplish the result predicted by the means described in the claim and specification. I have looked at the machine involved in this controversy from a standpoint different from that occupied by the counsel and expert witnesses of complainant. They have looked at the machine at present manufactured, and claimed by the complainant. I have looked at the machine which King had an exclusive right under his patent to manufacture and sell, as represented in the model constructed in accordance with description which he expressly made in his specifications and drawings filed in patent office. They insist that a wise and long established public policy allows improvers, as well as inventors, reasonable construction of their claims and specifications, and a liberal application of the often-applied doctrine of equivalents, to remedy mere deficiencies in their inventions. I am of opinion that well-settled principles of law, reason, and common justice require that mere improvers in combinations of old elements and ingredients should be limited by a strict construction of their descriptive claims and specifications, so as to leave the unappropriated field of art open to other improvers, that they may be encouraged to exercise their industry and inventive genius. A judge has a legal right, and it is his duty, to take judicial notice of such matters of science, art, and mechanism, and things of common knowledge as are involved in cases brought before him for determination. Brown v. Piper, 91 U. S. 37-42. I am fully aware of the value of the testimony of expert witnesses in matters of science and art, and a judge may well consider and be governed by such evidence in matters of complexity, obscurity, and doubt; but there are some cases where facts are so plain, simple, obvious, and convincing to any rational mind that common sense and ordinary knowledge are all sufficient to arrive at a just and correct opinion. The expert witnesses on both sides have shown considerable intelligence and familiar knowledge of the technicalities of the patent office. I have read their testimony, and considered their respective opportunities of acquiring

knowledge, their relation to the parties, their inducements for partiality or impartiality, and the reasons which they have assigned for their opinions; and I think that there is a decided preponderance of evidence in favor of the defendants and the views which I entertain.

I will not further express my views as to the patentability of the King machine and the invalidity of his patent, but will confine the subsequent part of this opinion to the question of infringement, and the doctrines of mechanical equivalents, chiefly relied upon by the counsel of complainant in their arguments and briefs. They insisted with earnest confidence that the patentee and his duly constituted assignee had the legal right to omit a constituent element of their patented machine, and substitute any well-known element or device that would accomplish the result claimed and intended by substantially the same means and in similar manner of operation. They properly insisted that the doctrine of equivalents applied to inventions for combination improvements. There have been numerous decisions in the supreme court and the circuit courts of the United States upon this subject, in which there appears to be some diversity, confusion, and conflict, which in many cases may be explained and reconciled by considering the peculiar facts and circumstances involved in each particular case. I will confine my opinion in this case to well-settled principles and definitions. As a general definition, a mechanical equivalent that may be properly substituted for an omitted mechanical element, device, or agency in a patented machine is one that performs the same function by applying the same force to the same object, through the same mode and means of application. In a combination patent for improvement, only, in the arrangement and application of old ingredients, the patentee is not entitled to invoke broadly the doctrine of mechanical equivalents, so as to cover a device not specifically included in his claim and specifications. The term "equivalent," as applied to a combination of old elements, is special in its signification, and materially different from what is meant when the term is applied to an invention consisting of a new device or an entirely new machine. The assignee of the patentee, in this case, cannot be allowed to invoke the broad doctrine of equivalents liberally extended to useful primary inventions, so as to include all forms of devices and adjustments which operate to perform the same functions and accomplish the same result. Miller v. Manufacturing Co., 151 U. S. 186–207, 14 Sup. Ct. 310.

The argument used in this case to show infringement assumes that every combination of devices in a machine which is used to produce the same effect is necessarily an equivalent for any other combination used for the same purpose. This is a very erroneous conception of the meaning of the term "equivalent." Burr v. Duryee, 1 Wall. 531–573. In a combination patent for an improvement of labor-saving machines, in which an old device is claimed and applied so as to be automatic in its operation, no equivalent can be lawfully substituted by the patentee for such specific device omitted in his combination, unless it be a well-known mechanical automatic device. Mere hand labor, controlled by the eye, cannot be substituted as an equivalent by an improver who claimed and obtained his patent as an improve-

ment in device and combination to be operated by mechanical force applied in specific arrangement. 1 Rob. Pat. § 254; Brown v. Davis, 116 U. S. 237–249, 6 Sup. Ct. 379.

I think I am fully warranted by reason, justice, and authority in saying that complainant greatly exceeded the legal scope of the King patent when it totally abandoned the specific and peculiar construction and arrangement of the King machine, and adopted as an entirety another machine, which substantially employed the elements, devices, combination, and arrangement of old machines constructed under previous expired patents. The Frost machine, adopted by complainant, as a mechanical equivalent, was not patentable, as it consists only of an aggregation of old elements and devices, differing in detail of combination and application, but operating substantially as the Smith and Messenger machine, which belonged to the public after the expiration of their patent. The Frost machine merely carried forward the original thought, with a change only in form, proportion, and degree, doing the same thing, in the same way, by substantially the same means, with better results. Davis v. Schwartz, 155 U. S. 631, 15 Sup. Ct. 237. A machine of old combination that works well, and accomplishes results intended and desired, cannot be substituted as a mechanical equivalent for a patented machine that will not and cannot be made to work, and is therefore impracticable and worthless. The law of patents affords no protection to a patented machine that has been proved by experiment to be useless and valueless. The owner of such a machine cannot sustain a suit for infringement against a person who employs the same old elements and devices, so differently combined and arranged as to operate successfully in accomplishing the result intended by the worthless machine.

I will now refer to a few cases in the Supreme Court Reports to show the trend of decisions on the subject of combination patents for improvement in mechanism, and exhibiting a decided, continuous, and increasing inclination of the court to hold mere improvers in mechanism to a rigid compliance with the claims, specifications, drawings, and models used in their applications for the privileges conferred by a patent.

In Burr v. Duryee, 1 Wall. 531, the doctrine so clearly announced in McCormick v. Talcott, 20 How. 405, is fully affirmed:

"If the invention claimed be itself but an improvement on a known machine, by mere change of form or combination of parts, the patentee cannot treat another as an infringer who has improved the original machine by use of a different form or combination performing the same functions. The inventor of the first improvement cannot invoke the doctrine of equivalents to suppress all other improvements which are not colorable invasions of the first."

Every man has a right to make an improvement in a machine, and evade a previous patent, provided he does not invade the rights of a patentee. He must not embody the same or substantially the same devices or combination of devices which constitute the peculiar characteristic of the previous invention.

In Sargent v. Lock Co., 114 U. S. 63–86, 5 Sup. Ct. 1021, the following language is employed:

"In patents for combinations in mechanism, limitations and provisos imposed by the inventor—especially such as were introduced into an application after it had been persistently rejected—must be strictly construed against the inventor, and in favor of the public, and looked upon in the nature of disclaimers. In such a claim, if the patentee specifies any element as entering into the combination, either directly, or by the language of the claim, or by such a reference to the descriptive part of the specifications as carries such element into the claim, he makes such element material to the combination, and the court cannot declare it to be immaterial. It is his province to make his own claim, and his privilege to restrict it. If it be a claim to a combination, and be restricted to specified elements, all must be regarded as material, leaving open only the question whether an omitted part is supplied by an equivalent device or instrumentality."

These principles of law are fully sustained by authorities cited, and they have been reaffirmed by more recent decisions in United States courts: Wright v. Yuengling, 155 U. S. 47, 15 Sup. Ct. 1; Coupe v. Royer, 155 U. S. 565, 15 Sup. Ct. 199; Roller Mill Patent, 156 U. S. 261, 15 Sup. Ct. 333; Black Diamond Coal Min. Co. v. Excelsior Coal Co., 156 U. S. 611, 15 Sup. Ct. 482; Stirrat v. Manufacturing Co., 10 C. C. A. 216, 61 Fed. 980; Wells v. Curtis, 13 C. C. A. 494, 66 Fed. 318.

In the light of these and many other authorities, I am of opinion that the complainant had no right to abandon in toto the machine authorized to be constructed under the King patent, and substitute as a mechanical equivalent the Frost machine, constructed upon a different combination and arrangement, far more useful, valuable, and salable, and hold as infringers the defendants and other manufacturers who had purchased, for valuable consideration, the said machine, and were using the same before the King patent was granted. Eby v. King, 158 U. S. 366–374, 15 Sup. Ct. 972.

Independent of the numerous authorities upon the subject, I am of opinion that the suggestions of common sense, the dictates of reason, and principles of common justice and equity, would warrant me in deciding in this case that a useful and valuable machine, consisting of an aggregation and arrangement of old and well-known elements and devices previously employed in machines constructed under expired patents, does not infringe upon the rights of a patentee who has a machine constructed in accordance with his claims and specifications, which will not and cannot be made to operate practically and usefully in the manner and form designed, and accomplish the purposes for which it was intended. The doctrine of a rigid construction of claim and specifications in a combination machine is especially applicable in this case, where the rights to the patent were regarded by applicant and the patent office as a matter of doubt; and this doubt was produced by the peculiar and characteristic features of the machine specifically described, for the purpose of distinguishing it from other previous and similar machines.

I will now briefly consider some special matters referred to in the pleadings and arguments, and insisted on by defendants as showing the merits of innocent purchasers for value, and that, in using their rightfully acquired machine, they had no purpose of invading the rights of complainant. They purchased their ma-

chine from Frost, when he was making application for a patent.
If he had obtained a patent, they would have been entitled to use
their machine under such patent.    As no patent was obtained, they
held their machine as a piece of personal property, purchased from
the former owner.    The only relation existing between defendants
and Frost was that of vendor and vendee.    As Frost was vendor
and manufacturer, there was an implied warranty of title, and also
of the fitness of the machine for the purpose represented and de-
sired.    They were not parties to the interference proceedings be-
tween Frost and King in the patent office, and were in no respect
bound or estopped by Frost's concession.    .They claim the personal
right to employ in their business their purchased machine, which
is only a substantial equivalent of the Smith and Messenger ma-
chine, which, by expiration of patent, has become open to the use
of the public.    A casual inspection and comparison of the models
of the respective machines of complainant and defendants clearly
show that defendants have not appropriated any element, device,
or arrangement invented by patentee, or claimed to be improved by
his mechanical knowledge and skill.    If the King machine was of
such a character as to be patentable, and his patent was not void
for want of novelty and utility, it is composed of three distinctive
and distinguishing features.    A machine is a concrete thing, being
an entirety of co-operating elements and agencies.    When it con-
sists of a combination of old elements and devices, the leaving out
of one of the essential elements of the combination destroys the
identity of the combination, and a person cannot be sued as an in-
fringer who uses a machine in which a material part of the com-
bination patent is omitted.

The reasonable and just doctrine is well settled that, when a pat-
ent has been obtained for a combination, after the patentee has
availed himself of all the knowledge derivable from a series of ex-
isting devices of a similar character, the claim must be restricted
to the precise form and arrangement of parts described in specifica-
tions.    Such a patent is an entirety, and all the parts of the com-
bination must be used in order to constitute an infringement.
Roemer v. Peddie, 132 U. S. 313–317, 10 Sup. Ct. 98; Mott Iron
Works v. Standard Manuf'g Co., 4 C. C. A. 28, 53 Fed. 819.    The
patent law wisely and properly requires an applicant for a patent
to particularly point out and distinctly claim the part, improve-
ment, or combination he claims as his invention or discovery, to
secure to him all to which he is entitled, and to apprise other im-
provers what is still open to them.    The claim is his self-imposed
limit of the right he desires to secure, and cannot be expanded by
a liberal construction of claim and specifications in a suit for in-
fringement.    McClain v. Ortmayer, 141 U. S. 419–424, 12 Sup. Ct.
76.    The patentee, in his description, distinctly claimed an auto-
matic feed hopper, and a peculiar spray device, located within the
spray drum.    The defendants have dispensed with the automatic
feed hopper, and use a different spray device, located outside of
spray drum, and therefore do not infringe the peculiar combination

and entire machine of patentee.    On this subject it is sufficient for me to refer to what I have heretofore said,—the defendants' machine has a combination and arrangement that works well and satisfactorily, while the patented machine is practically inoperative and worthless, and has been abandoned by its owner.

There are some singular facts and circumstances in the dealings and relations of J. C. Frost and J. M. King in their interference proceedings in the patent office, and their subsequent connection with complainant.    Frost manufactured and sold his machine to defendants and other tobacco manufacturers before the date of the King patent.    In such machine the spray device was located outside and near the front of the spray drum as now represented by model of defendants' machine.    In the interference proceedings, Frost claimed the spray device as located within the drum.    He conceded priority of invention, and King obtained a patent.    In a few days the complainant became the owner of such patent, and some time afterwards purchased patterns of Frost.    The complainant had previously purchased the Smith and Messenger patent, which was about to expire, and frequently insisted that said patent was infringed by the Frost machine.    Such machine was only an improved equivalent of the Smith and Messenger machine, and was not patentable. The peculiar and distinctive combination of the King machine obtained a patent after doubt, overcome by persistent efforts.    The complainant then substituted the Frost machine as a mechanical equivalent of the King machine; and thus the Smith and Messenger machine of an expired patent was virtually taken from the public, and placed under the protection of the King patent.    These singular facts and circumstances were referred to in the answer of defendants, and were commented upon by counsel with some severity. As neither party to this suit took the deposition of Frost, and gave him opportunity of explanation, I may well suppose that counsel on both sides regarded his testimony as either dangerous or immaterial.    The testimony would have been immaterial as to the facts directly involved, and could only be considered in the light of some well-known maxims that are recognized and observed by a chancellor when determining the merits of a case of complainant seeking relief in a court of equity and good conscience.

I am aware of the fact that I have made several repetitions of legal principles in this opinion, but I deemed such course necessary to meet the various phases of the case presented in the pleadings and voluminous proofs, and in the able arguments and elaborate briefs of counsel.    After full consideration, I am very decidedly of opinion that the weight of evidence and the equitable principles involved are on the side of defendants.    Let a decree be drawn dismissing complainant's bill, with costs.