DEY TIME REGISTER CO. v. SYRACUSE TIME RECORDER CO.

(Circuit Court, N. D. New York. April 2, 1907.)

**1. PATENTS—INFRINGEMENT—EQUIVALENT PARTS IN COMBINATION.**

Where a patent is for a mere improvement consisting of a new combination of old elements, the range of equivalents is narrow.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Patents, § 386.]

**2. SAME.**

A substituted part in a patented combination, in order to constitute an equivalent which will not avoid infringement, must not vary in any manner the idea of means, and, while it may perform some new or additional function, and still be an equivalent, it must perform all the functions of the element for which it is substituted in substantially the same way, and be a mere change of parts and form involving no inventive skill, but suggested by the patented invention itself to every person skilled in the particular art. If it not only performs the functions of the element for which it is substituted, but introduces into the combination a new idea or a much more extended development of the idea of means, it is not an equivalent, but a patentable improvement.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Patents, § 386.]

**3. SAME—WORKMAN'S TIME RECORDER.**

The Dey patent, No. 524,102, for a workman's time recorder, discloses no new or novel mechanism or means, but is for an improvement only which consists in a reorganization of old parts to produce a better operation and an improved result, and must be construed and limited accordingly. Claim 1 is not infringed by a machine in which the platen, which is an essential element of such claim, is wholly dispensed with, as well as the mechanism necessary for its operation, without the substitution of a new part; its functions being devolved on a remaining part by a change of mechanism and a different mode of operation.

In Equity. Suit to enjoin alleged infringement of claim 1 of United States letters patent No. 524,102, to John Dey, of Syracuse, N. Y., dated August 7, 1894, application filed November 11, 1892, and now owned by complainant.

Warfield & Duell (Charles H. Duell and F. P. Warfield, of counsel), for complainant.

Howard P. Denison (Frank Hiscock and William W. Dodge, of counsel), for defendant.

RAY, District Judge. The claim in suit and alleged to be infringed reads as follows:

"(1) A workman's time recorder comprising time-printing wheels, a band movable longitudinally in either direction in proximity to said printing-wheels and having a longitudinal row of consecutive numbers marked upon it, a manually operated lever, controlling the movement of said band, and an index traversed by said lever and numbered to correspond to the band; and a platen actuated by said lever and pressing the band into contact with the time-printing wheels as set forth."

Its elements are: (1) Time printing wheels; (2) a band movable longitudinally in either direction and in proximity to the said printing wheels, and having thereon a longitudinal row of consecutive numbers which may be printed or written thereon; (3) a manually operated lever which controls the movement of the band; (4) an index traversed by said lever and numbered to correspond with the band; and (5) a platen actuated by said lever and pressing the band into contact with the time-printing wheels; lastly, "as set forth." This is not the pioneer invention in this type of time recorders, which is known as the "Dial Time Recorder," as distinguished from the Card Time Recorder, Cooper patent, and the Key Time Recorder, Bundy patents. The general operation of the recorder described in this patent is as follows: As the workman enters, he moves the lever to his number on the dial (each workman having a number), and presses the same back against or towards it. On the inside of the end of this lever is a pin which enters a small opening or perforation in the dial, located at this number, and, pressing against and actuating certain mechanism, causes the platen on a sort of hammer to rise and strike or press quickly against the band, at and by the side of the corresponding number thereon, thereby causing the band and interposed inking material, or carbon, to strike or press, or be pressed, against the time-printing wheel, which has type thereon designating the hour and minute at all times during 12 or 24 hours of the day. This operation prints on the band opposite the number of the workman pushing the lever the hour

and minute when it is done, and consequently registers the time of his arrival. The clock and clockwork are old. The time-printing wheels are old. They move with the clock, and are found in the prior art. The band, having a longitudinal row of consecutive numbers marked upon it, is also old, found in the prior art, and, indeed, shows no novelty. It is simply a strip of paper, or like material, having these numbers marked thereon. When used for the day, it is or may be taken out, and may then be filed or bound as a permanent record. It is like the sheet of paper put in a typewriter. It is put in to be printed upon, and, when printed on for the day, or, it might be for the half day, it is taken out. There is nothing new or novel in moving it longitudinally. The manually operated lever is not new or novel. It has a mode or mechanism of its own for controlling the movement of the band. The index traversed by the lever and numbered to correspond with the band is old in the prior art. It has the apertures for the pin, but there is nothing new or novel about it. The platen actuated by the lever and pressing the band into contact with the time-printing wheels has no new or novel features. Complainant's counsel says in his brief:

"These elements are the chief characteristics of the well-known type of machine known as the 'Dial Time Recorder,' and the claim relates to this general combination of elements, and does not concern itself with the unimportant details of the mechanism by which the general combination of elements may be embodied."

Turning to the specifications of the patent in suit, we have a detailed description of the mechanism shown in the drawings, but nothing as to possible variations thereof either in essential or nonessential details. The patent expressly refers to a similar time recorder covered by United States letters patent to Alexander Dey, No. 411,586, of September 24, 1889, and says:

"The invention [of the patent in suit] consists in an improved reorganization of the recording mechanism and means for operating the same, all as hereinafter fully described and summed up in the claims."

No new or novel mechanism or means is claimed. The invention is in the reorganization and possible improvement of the old mechanism incident thereto, in the new arrangement and putting together with necessary changes in construction. The patentee confesses himself to be a mere improver, and that his improvement consists in the "reorganization" of old parts; a new organization in a different way, or manner, but in an improved manner, so as to produce a better operation and an improved result. The construction and limitations of the claim in suit are to be measured accordingly. After describing the type-wheel and hour-wheel, "time-printing wheels," the patent locates, and to an extent describes, the "platen" and its operation, as follows:

"Facing the said type-wheel and hour-wheel and preferable arranged directly under them is the vertically movable platen, C, which is attached to the free end of a spring-arm, c', fastened to a rock-shaft, d, pivoted to the plate, A'; said platen receiving its vertically oscillatory motion by the mechanism under control of the operator, as hereinafter described."

Then, says the patent:

"At opposite sides of the platen are two rollers, D and D'; mounted on revoluble shafts, e, e, which are parallel with the axis of the type-wheel."

Also,

"An impression-receiving band or ribbon, E, is wound upon and secured at opposite ends to the rollers,"—meaning the rollers, D, D'.

This "impression-receiving band" is the "band moving longitudinally in either direction" of the claim.   The manner and means for doing this are described at length.   The movement of these rollers, D, D', the attachment thereto of the impresssion-receiving band, and the movement of the platen are described at great length as follows:

"The rollers, D, D, are made to revolve with their shafts by the latter being square in cross-section, and upon these shafts are mounted sleeves, f', also squared internally and cylindrical externally and screw-threaded on their rear end-portions and provided with fixed collars, f", f", a proper distance from the screw-threaded portions to receive between them the rollers, D, D', which are mounted on said sleeves.   The hollow roller or drum is of metal and fastened directly to the roller, f', and inside of said drum is the spool, D", loosely mounted on the sleeve and fixed to a cap which covers the open rear end of the drum and is held in position by a nut on the screw-threaded end of the sleeve. To the inner periphery of the drum is fastened one end of a spring-plate, t', which lies with its free end across the slot, u'.   The band, E, passes from the spool over the end of the spring plate and back through the slot, u, and is thereby clamped in the drum.   The said rollers are rotated in unison so as to cause one roller to wind up the impression band, E, as fast as said band is unwound from the other roller, and this is effected at will of the operator by the following mechanism:

"Horizontally through the case, A, passes a hollow shaft, g, which is journaled in suitable bearings inside of the case and protrudes through the front thereof, where it has affixed to it a crank, g', to which is pivoted a lever, g", one end of which extends across the end of the shaft and the other end extends to a dial, F, which is concentric to the shaft, g. and is marked with consecutive numbers distributed uniformly around the dial, and opposite each of said numbers is a perforation, g'′′, in the front plate of the case.   A pin, h, projecting from the free end of the lever, g", is adapted to enter into any one of the perforations at a time.   The inner end of the hollow shaft, g, has fastened to it a gear-wheel, h', which meshes with pinions, h", h", mounted on the shafts, e, e, of the rollers, D, D'.   Hence by turning the hollow shaft rotary motion is imparted to the said pinions.   One of the pinions, h", is mounted loosely on its shaft, e, and connected to it by a spiral spring, f'′′, which exerts a strain on the shaft in opposite direction from that of the shaft of the collar, and thereby maintains the impression band, E, constantly taut between the rollers.   The impression band, E, has printed upon it lengthwise thereof a row of numbers corresponding to those on the dial, F, which latter serves as an index by which to determine the degree of rotation to be imparted to the lever, g", to bring the impression-receiving band into its requisite position in relation to the time-printing wheels to print the time opposite the proper number on the band.   The said band is so adjusted on the rollers as to bring O directly over the platen when the pin, h, of the lever, g", is inserted in the perforation directly opposite O of the dial.   For this purpose I fasten a ratchet-wheel to the sleeve, f', of the solid roller, D', and pivot to said roller, a pawl, t, which engages said ratchet-wheel as shown in Fig. 12 and causes the same to rotate with the sleeve.   In adjusting the band, E, as aforesaid, it is drawn out of the hollow roller or drum and wound upon the roller, D, which is effected without turning its sleeve and shaft with it.   In order to accomplish this adjustment more accurately I attach to the cross-bar, a', a, pointer, h'′′, as shown in Fig. 2 of the drawings; said pointer being set directly over the platen.

"The platen receives its vertical oscillatory motion toward and from the type-wheel by means of a plunger, i, extending through the hollow shaft, g, and bearing with its inner end on a cam or a short lever-arm, d', affixed to the rock-shaft, d, the outer end of the plunger bears against the lever, g", and is forced outward or toward said lever by means of a coil spring, O, bearing at

opposite ends on shoulders formed on the interior of the hollow shaft and exterior of the plunger, as shown in Fig. 4 of the drawings. In pushing the free end of the lever toward the dial at the same time of entering the pin in the perforation of said dial, the plunger is forced inward, and by means of the cam or lever arm, d', throws the platen toward the type-wheel. In order to obtain a more effective stroke of the said platen I pivot a latch, j, to a bracket, i', fastened to the rear of the plate, A', as shown in Figs. 4 and 9 of the drawings. Said latch comes in contact with the spring-arm, c', of the platen in its movement toward the type-wheel and subjects said spring-arm to considerable strain toward the latter part of the inward movement of the plunger. A tripping finger, d' ' ', fixed to the rock-shaft, d, strikes the latch during the latter part of the movement of the plunger, and thereby releases the spring-arm, c', from the latch. The platen then receives the spring action of the spring arm.

"In order to hold the type-wheel stationary during the period of printing, I employ a detent, F', which engages the notched-wheel, B', similar to that shown in the patent to Alexander Dey hereinbefore mentioned. Said detent is pivoted to a bracket, F'', fastened to the top portion of the plate, A', and is thrown into engagement with the said notched-wheel simultaneously with the movement of the platen toward the type-wheel by means of an arm, d'', fixed to the rock-shaft, d, and a rod, d' ' ', connecting said arm with the detent in front of the pivot thereof, as shown in Fig. 6 of the drawings."

Then follows a description of the "carbon ribbon" which passes between the type-wheel and impression band, E, and is wound upon and secured at opposite ends to the spools, E', and their moving mechanism is then described. These spools, E', correspond in location with the rollers, D, D', and the carbon ribbon travels in unison with the impression-receiving band, but by its own mechanism. The rollers, D, D', are shown in the drawings arranged in a horizontal plane at some little distance from each other and below the time wheels. The platen is located at an intermediate point just below a line drawn in the horizontal plane of the upper edges of these rollers. Consequently that part of the band, as well as that part of the carbon ribbon reaching from roller to roller and from spool to spool, respectively, are in the air, so to speak, unsupported except at the points where they touch the rollers and spools. This part of the impression band and this part of the carbon ribbon are kept taut in the manner described. This suspended part of the impression band is guarded against disruption as follows:

"A stop, t', on the dial prevents the lever, g'', from making more than a complete revolution in either direction, thus obviating the danger of disrupting the impression receiving band."

The construction and combination pointed out and described neither presents nor suggests an alternative construction, nor presents this as a preferred construction. The patent points out and sets forth a specific "band movable longitudinally in either direction" and specific means for so moving it and a specifically arranged and located "platen actuated by said lever" which is operated by the specific means described.

Here arises the controversy in this case. The defendant's time recorder, which is of the same type, has in combination (1) the time-printing wheels; a band, impression band having "a row of consecutive numbers marked upon it," and which is "movable longitudinally in either direction" only in so far as any tape or band wound upon a single wheel or spool, or roller, is movable longitudinally in either

direction as it is unwound therefrom by the revolution of such wheel or spool, or as it is carried (a very small portion of it indeed) in a longitudinal direction by the revolution of the wheel or roller. In strict refinement, in this latter case, it is but a mere point of the band that is movable in a longitudinal direction as the roller revolves. Such a movement of the band is very far from the longitudinal movement of the band when unwound from one wheel or roller and wound upon another of the same size both revolving in the same horizontal plane. This is not a fanciful nor a technical difference, but a substantial one. In defendant's time recorder, alleged to infringe, this band, having the consecutive numbers marked thereon, is wound on one roller, and not attached to any other, and all the printing done on it is done by either striking or pressing this roller, and consequently the band, against the type on the time-printing wheel, or by bringing the latter down against the roller having the band wound thereon. Defendant's time recorder has, also, the manually operated lever controlling the movement of the band, for the reason it controls the revolution of the roller on which it is wound, and for no other reason and in no other way, and also the index traversed by the lever and numbered to correspond to the band; but, the important and crucial question is: Does the defendant's recorder have "a platen actuated by said lever and pressing the band into contact with the time-printing wheels as set forth," or an allowable equivalent?

.One roller of the patent in suit is dispensed with entirely; both rollers as therein described, and one roller is substituted. So the platen and much of the mechanism actuating it of the patent in suit is dispensed with entirely. And the substituted platen, if it may properly be called that, does not press the band into contact with the time-printing wheels, except as it, being wound on the roller and on the periphery thereof before the band is wound thereon, is necessarily interposed between the wheel proper and the band, and, therefore, when the roller is pressed against the time-printing wheels, or vice versa, the band is necessarily pressed into contact with the time-printing wheels. In no proper sense, in my judgment, does this platen, which is merely some yielding substance attached to the surface of the periphery of the roller, press the band into contact with the time-printing wheels. That is done by the roller as it moves or as it is struck by the moving time-printing wheels. In the patent in suit, the operation of the platen there shown, described and made an essential element of the claim, and without which the device patented is inoperative, has an independent movement of its own and, in part, independent mechanism for actuating it. It does not operate in the same way as does defendant's to effect the printing. In the alleged infringing time recorder, the platen is a mere incident to the completed roller and may be of any material, or may be wholly omitted as the recorder, the wheels, and roller would record or print the time on the band just the same, although not as well or as distinctly.

In defendant's recorder we have in place of the two rollers, D, D', and the independent hammer or free end of the spring-arm on the face of which the platen proper is placed, and the spring-arm and its

actuating mechanism, and some of the mechanism of one of the rollers, a single roller on the periphery of which is placed, conforming thereto, a substance of the same general nature and serving the same purpose as the corresponding substance on the hammer at the free end of the "spring-arm," c', and which together make the platen, and on this, conforming to the periphery of this roller, is wound the "impression band." This is not the platen of the patent in suit, but it is broadly, in connection with the roller, an equivalent in so far as it serves the same purpose, but it does not operate in the same way, nor is it actuated in the same way, or by the same or even similar means. The actual printing is not done in the same way. It is an improvement and a marked improvement on the platen of the patent in suit. It is not a mere change in form. In printing "a platen" is "the flat part of a press which comes down upon the form, and by which the impression is made. Platen press, any form of printing press which gives impression from a platen, in distinction from rotary or cylinder presses, which give impression from a cylinder or a curved surface." Century Dictionary. Platen:

"(a) The part of a printing press which presses the paper against the type and by which the impression is made; (b) hence an analogous part of a typewriter on which the paper rests to receive an impression; (c) the movable table of a machine tool, as a planer, on which the work is fastened and presented to the action of the tool."

From a careful study of the derivation and meaning of the word "platen" in mechanics, especially in the printing press art, and from the minute and detailed description of the "platen" of the patent in suit, given in the specifications thereof, I am convinced that Dey had in mind and intended a combination, in claim 1 in suit, having a separate and distinct platen as a separate and distinct element movable and actuated by its own peculiar mechanism, as distinguished from the rollers, D, D', carrying the band. The two rollers, D, D', are not made an element of the claim, but "a band movable longitudinally in either direction in proximity to said printing wheels" is, and as this must be in the combination and connected with it, in some way, and that way or mode is specifically pointed out and is by means of the two rollers, without which the device would be wholly inoperative, I think the rollers, or an equivalent, are a part of that element of the combination, and must be so considered. Therefore the one roller of defendant's recorder, with the impression band thereon, is the substitute for and equivalent of the "band movable longitudinally in either direction," and answers to that element including the two rollers; but it is not at the same time a substitute for and the equivalent of that other element of complainant's claim 1, "a platen actuated by said lever and pressing the band into contact with the time-printing wheels as set forth." In truth defendant's time recorder has wholly omitted and dispensed with the platen of claim 1 of complainant's patent. Defendant does not use one element of the claim in suit, and does not infringe. In complainant's recorder, both rollers move up with the band to meet the time-printing wheels, or in another construction may remain stationary while the time-printing wheels come to them, or into the same line with their upper periphery; but the

same is true of the one roller of defendant's recorder. Dey was but an improver, in no sense or degree a pioneer, and the range of allowable equivalents is so narrow, and the defendant's recorder, in respect to the very elements in question, is so plainly and distinctly differentiated from complainant's, that infringement is not made out. If I have any proper conception of the principle repeatedly declared by the Supreme Court of the United States and plainly and recently stated in Cimiotti Unhairing Co. v. American Fur Refining Co., 198 U. S. 399, 406, 407, 25 Sup. Ct. 697, 49 L. Ed. 1100, infringement is not established in this case. The syllabus of that case is as follows:

"A greater degree of liberality and a wider range of equivalents are permitted where the patent is of a pioneer character than when the invention is simply an improvement, although the last and successful step, in the art theretofore partially developed by other inventors in the same field.

"The patent involved in this case for the unhairing of seal and other skins, while entitled to protection as a valuable invention, cannot be said to be a pioneer patent.

"In making his claim the inventor is at liberty to choose his own form of expression, and, while the courts may construe the same in view of the specifications and the state of the art, it may not add to or detract from the claim.

"As the inventor is required to enumerate the elements of his claim, no one is the infringer of a combination claim, unless he uses all the elements thereof.

"Where the patent does not embody a primary invention, but only an improvement on the prior art, the charge of infringement is not sustained, if defendant's machines can be differentiated."

In the opinion, the court says:

"In determining the construction to be given to the claim in suit, which is alleged to be infringed, it is necessary to have in mind the nature of this patent, its character as a pioneer invention or otherwise, and the state of the art at the time when the invention was made. It is well settled that a greater degree of liberality and a wider range of equivalents are permitted where the patent is of a pioneer character than when the invention is simply an improvement, may be the last and successful step, in the art theretofore partially developed by other inventors in the same field. Upon this subject it was said by this court, in Westinghouse v. Boyden Power Brake Co., 170 U. S. 537, 18 Sup. Ct. 707, 42 L. Ed. 1136, quoted with approval in Singer Co. v. Cramer, 192 U. S. 265, 24 Sup. Ct. 291, 48 L. Ed. 437: 'To what liberality of construction these claims are entitled depends to a certain extent upon the character of the invention, and whether it is what is termed in ordinary parlance a "pioneer." This word, although used somewhat loosely, is commonly understood to denote a patent covering a function never before performed, a wholly novel device, or one of such novelty and importance as to mark a distinct step in the progress of the art, as distinguished from a mere improvement or perfection of what had gone before.' * * * In making his claim, the inventor is at liberty to choose his own form of expression, and, while the courts may construe the same in view of the specifications and the state of the art, they may not add to or detract from the claim. And it is equally true that, as the inventor is required to enumerate the elements of his claim, no one is an infringer of a combination claim unless he uses all the elements thereof. Shepard v. Carrigan, 116 U. S. 593, 597, 6 Sup. Ct. 493, 29 L. Ed. 723; Sutter v. Robinson, 119 U. S. 530, 541, 7 Sup. Ct. 376, 30 L. Ed. 492; McClain v. Ortmayer, 141 U. S. 419, 425, 12 Sup. Ct. 76, 35 L. Ed. 800; Wright v. Yuengling, 155 U. S. 47, 15 Sup. Ct. 1, 39 L. Ed. 64; Black Diamond Co. v. Excelsior Co., 156 U. S. 611, 617, 15 Sup. Ct. 482, 39 L. Ed. 553; Walker on Patents, § 349."

And in the recent case of Computing Scale Company of America v. Automatic Scale Company (decided by the Supreme Court February

25, 1907, not yet officially reported), 27 Sup. Ct. 307, 51 L. Ed. ——, the court said:

"Conceding that this spiral rod and its connections with the cylinder in the manner and for the purposes stated is a novel feature in the combination and entitled to protection, it is of that narrow character of invention which does not entitle the patentee to any considerable range of equivalents, but must be practically limited to the means shown by the inventor. The distinction between pioneer inventions permitting a wide range of equivalents, and those inventions of a narrow character, which are limited to the construction shown, has been frequently emphasized in the decisions of this court. Cimiotti Unhairing Co. v. American Fur Refining Co., 198 U. S. 399, 406, 25 Sup. Ct. 697, 49 L. Ed. 1100, and cases therein cited. Thus limiting the invention, we do not think the construction of the defendant amounts to an infringement."

In view of a patent to said John Dey dated July 10, 1894, No. 522,-784 (the patent in suit is dated August 7, 1894), and granted 27 days prior to the grant of the patent in suit, but applied for January 16, 1893, about two months after the filing of the application for the patent in suit (the patent in suit was applied for November 11, 1892), I do not see how it can be claimed that the single-roller construction, the roller carrying the band and doing the work of a platen, and used by defendant, is covered broadly, or otherwise, by claim 1 of the patent in suit. Having applied for the patent in suit November 11, 1893, and inserted claim 1 for the combination therein mentioned, including as a necessary and material element the specific platen described in the specifications, on the 16th day of January, 1893, 65 days later John Dey applied for another patent for workman's time recorder, consisting "more particularly in specific improvements of the construction and combination of the details of the apparatus as hereinafter fully described and set forth in the claims." He then mentions the clock mechanism, the time-printing wheels, and then says:

"Beneath the minute-wheel, C, and hour-wheel, C′, is the impression roller, R, mounted longitudinally movable on a shaft, a′′′, which is parallel with the shaft of the said minute-wheel and journaled in vertically movable props, P, P, by which the roller, R, is lifted to cause the types of the wheels, C, C′. to make their impressions on the band of paper secured to the periphery of the roller. This paper has printed upon it consecutive numerals arranged in a row extending lengthwise of the paper, and I preferably wind one end thereof upon a spool, R′, mounted on the shaft, a′′′, inside of the roller, R, which latter is formed hollow and provided with a transverse slot in its periphery, through which slot the paper band passes and thence around the external periphery of the roller and back through the aforesaid slot and is clamped or otherwise suitably fastened to the inner periphery of the roller, as illustrated in Fig. 3 of the drawings. At the end of each working day the portion of paper containing the records is removed from the roller, R, and torn from the roll, and another section of paper is drawn out and applied to the exterior of the roller, R, in the manner as before described. The successive sections of the roll of paper are numbered alike." * * * To produce the impressions of the minute-wheel, C, and hour-wheel, C′, upon the paper band mounted on the roller, R, the ink ribbon, i, is interposed between said wheels and paper. * * * In order to allow the recordings during different periods of the day to be made distinctly on the band of paper, I make the latter and its carrying roller, R, of sufficient width to allow the different times of recording to be printed in rows opposite the respective numbers marked on the paper, and to allow the roller to be shifted laterally and thus permit the printing to be done at different points in the width of the paper I mount said roller loosely on its shaft, a′′′, and connect

it thereto by a spline in the hub of the wheel entering a longitudinal groove, s, in the shaft."

He then claims:

"(1) In combination with the time-printing wheel and a revoluble impression roller, a lever turning said roller, a rock-shaft moving said roller toward the printing wheel and a plunger operated by the lever and actuating said rock-shaft, as set forth."

This roller carries on its periphery the impression band of the patent in suit. It carries this band into contact with the time-printing wheels, and it must perform every function of the platen of the patent in suit, operating in substantially the same way to produce precisely the same result, if the single roller of defendant's recorder is the equivalent of and takes the place of the platen specifically described in the patent in suit. In short, if claim 1 of the patent in suit is broad enough to include the single roller carrying the impression band, and does, then we have a case of double patenting. To my mind the fact that the same patentee, two months after applying for the patent in suit, applied for a patent for this single roller carrying on its periphery the impression band and doing the printing by being brought into contact with the time-printing wheels, demonstrates that he had no conception, idea, thought, or intent that the said single roller, carrying the band, was the equivalent of the platen he had described in his application for the patent in suit. It shows conclusively that the patentee himself so differentiated them that it cannot be contended the single roller construction and operation is covered by claim 1 of the patent in suit. If it is so covered, then claim 1 of the patent in suit is void. It is in this element that complainant says his invention resides. As he had a patent for it July 10, 1894, in combination with other old elements, working in a given old way, to produce an old result, how could he have another valid patent for the same element in combination with other old elements, operating in the old way, to produce the old result?

The complainant's expert repeatedly admits that defendant's recorder does not have the specific form or embodiment of parts or mechanism shown and described in claim 1 of the patent in suit, and that it is only by reading into such claim elements not referred to that an operative recorder is found, or that the claim covers or can be applied to defendant's structure. In short, according to this expert, we must change the reading of claim 1, and strike out the words "a platen actuated by said lever and pressing the band into contact with the time-printing wheels as set forth," and substitute the words "means for effecting impressions of the printing mechanism on the record sheet." He thinks complainant entitled to a construction so broad that defendant's single roller is both the support and guide of the impression band, "band movable longitudinally in either direction," etc., and the "platen actuated by said lever and pressing the band," attached to and supported by and, in part, extended between two rollers without support, except as held "taut" by the mechanism described, "into contact with the time-printing wheels as set forth." I think such a construction is not warranted, in view of the language of the claim, the specifications, the fact that this is merely an improvement, and the decisions referred to.

152 F.—29

It should be noted that the following elements of claim 1 of the said patent to Dey of July 10, 1894, No. 522,784, are found in claim 1 of the patent in suit, viz.: Elements: (1) Each, time-printing wheel; (2) "revoluble" impression roller which includes band having the numbers, in the one patent, and "a band movable longitudinally," etc., in the other, being made movable by two rollers; (3) "rock-shaft moving said roller," etc., in the one and "platen * * * pressing the band into contact with the time-printing wheels" in the other, the pressing being done by the rock-shaft; (4) "plunger operated by the lever and actuating the rock-shaft" in the one end and "plunger" operating with the lever and rock-shaft to press "the band into contact with the time-printing wheels, as set forth," in the other. The plunger and rock shaft are both "set forth" and fully described in the description of the elements of claim 1 of the patent in suit. The functions are substantially the same in both patents. And then claim 1 of the patent in suit has the additional element of the "platen," which, as stated, is wholly omitted from defendant's recorder, as well as from patent No. 522,784, to Dey. In patent 522,784, "lever" is designated I; in patent No. 524,102, as g." "Plunger" as g in the one; as i in the other. Rock-shaft as e in the one, and as L in the other. In the patent in suit, we have "movable platen, C, which is attached to the free end of a spring-arm, c', fastened to a rock-shaft, d, pivoted to the plate, A," and "the platen receives its vertical oscillatory motion toward and from the type-wheel by means of a plunger, i, extending through * * * affixed to the rock-shaft, d, the outer end of the plunger bears," etc., and "in pushing the free end of the lever * * * the plunger is forced inward and * * * throws the platen towards the type-wheel." In the patent of July 10, 1894, No. 522,784, we have "the shaft * * * is hollow and in the interior thereof is the longitudinally movable plunger, g, which is forced outward and caused to abut against the lever, I, by means of the spring, g', pressing against the inner end of the plunger. On the exterior of the shaft * * * is a * * * collar, F, which is connected to the plunger, g, by * * *." The result is that by pressing the free end of the lever, I, towards the case, A, the plunger, g, is pushed inward and carries with it the collar, F. This movement of the collar causes the finger, e', to turn the rock-shaft, e, which, * * * and this action of the shaft causes * * * to lift the roller, R," etc. Again: "The shaft, l', receives its rocking motion * * * projecting from the rock-shaft, e, which is actuated by the plunger, g." And again: "Then by pushing the lever towards the case, A, the plunger, g, is actuated to arrest the movement of the minute-wheel, C, and lift the impression roller, R, to print the time upon the paper mounted on said roller."

The complainant claims invention in this single roller construction and combination used by the defendant, and, such being the case, I do not understand how it can be claimed as the equivalent of the platen of claim 1 of the patent in suit. An equivalent must not vary in any manner the idea of means, or affect it in any degree. It is quite true that the equivalent may perform some new or additional

function in the invention, and still be an equivalent; but it must perform all the functions of the element for which it is a substitute in substantially the same way, and I do not think that it is material that the element for which another is substituted has more parts or less parts. The substitution of an equivalent is, however, a mere change of parts and form involving no inventive skill, but suggested by the invention itself to every person skilled in the particular art. If the alleged equivalent not only performs the function of the element for which substituted, and perhaps more, but introduces into the combination a new idea, or new ideas, or a much more extended development of the idea of means, then we do not have the substitution of an equivalent, but a patentable improvement—something different in principle and function. In combination claims this is especially true. 1 Rob. on Patents, 254; Wells v. Curtis, 66 Fed. 318, 13 C. C. A. 494; 20 Eng. Pat. Cas. Am. Notes, 271.

When we have in combination certain elements working together and co-operating to produce a given result, they work in accordance with and in obedience to some law of co-operative action. When we change one element which works and operates differently from the one for which it is a substitute we necessarily change the action of all, and then the combination operates according to and in obedience to another co-operative law, and we have a new combination working in a different way to produce a result, and it may be the same result; but it is not obtained in the same way by the co-operation of the same elements or their equivalents. Such, in my judgment and opinion, is this case. It is not enough that the two elements, one of which is alleged to be the equivalent of the other, perform the same function when in the same place; but they must perform that function by applying the same force to the same object, through the same mode of application. Goodyear Dental Vulcanite Co. v. Davis, 102 U. S. 222, 26 L. Ed. 149, which was a patent for a process; Burr v. Duryee, 1 Wall. 531, 572, 17 L. Ed. 650, 660, 661; Westinghouse v. Power Brake Co., 170 U. S. 568, 569, 18 Sup. Ct. 707, 42 L. Ed. 1136; Curtis on Patents (4th Ed.) § 310; Machine Co. v. Murphy, 97 U. S. 125, 24 L. Ed. 935; Carter Machine Co. v. Hanes (C. C.) 70 Fed. 859, 865; Duff Mfg. Co. v. Forgie, 59 Fed. 772, 775, 8 C. C. A. 261, citing and approving 1 Rob. on Pats. § 247.

The object or purpose of the patent in suit is to print on the band or time slip, by means of the type, and by bringing the two in contact, the hour and minute of the workman's arrival and departure. The object and purpose of defendant's device is the same. The force employed is applied to the same object, viz., the band, through the medium of certain mechanism. If that force is the hand of the workman manipulating and pushing the lever, we have the same force. If it be the platen in the one case, and the roller in the other, each of which presses the band against the type because of the force applied by the workman, we do not have the same identical "force," but an equivalent "force," clearly. Hence we have the same force applied to the same object, to accomplish the same purpose or result. The question remains: Is this force applied to this object and to accomplish the pur-

pose through the same mode of application? But "mode of application" does not mean the mere contact of the band with the type, but the mode of action of the mechanical devices used to bring them together. Is the same law of co-operative action employed in both cases acting through substantially the same means?

In the claim in suit of the complainant's patent, this impression band is carried on two rollers, and must be movable longitudinally. This is the essence of this element of the claim and made so by express words. It is made so movable by two rollers on distinct shafts and arranged in the same horizontal plane which turn in unison and wind the band onto the one roller as it is unwound from the other. This longitudinal movement of the band is impossible in defendant's construction, and is not present. The law of its movement in defendant's construction is circumferential or rotary, and not longitudinal. In the one case the band is rotated with the roller as a whole to bring the required number to the type, and there is no winding and unwinding. The type and band are then brought together by raising the roller into contact with the type-wheel or by dropping the wheel into contact with the roller, and thus the printing is done; while in the other it is not rotated as a whole, but, as one part or end is unwound from one roller, it is carried longitudinally through space underneath the type on the printing wheels by the revolution of another roller, halted long enough to be pressed against such type by an independent platen and receive the impression, and then wound upon the other roller. It is the part suspended in space, away from both rollers, that is pressed against the type and receives the impression therefrom. It is so pressed against the type by independent means, a distinct element of the claim absolutely essential to its operativeness by the action of other laws, by the same force, but applied in a different way, and by different means.

I deem it immaterial that two elements of a claim of one patent are inserted in one element of the claim of an alleged infringing patent. Bundy Mfg. Co. v. Detroit Time Reg. Co., 94 Fed. 524, 538, 36 C. C. A. 375. Such union of the two elements does not avoid infringement, provided they both be there. But both must be found in the alleged composite element; that is, both must be found in the infringing device. It is no answer to say that both are unnecessary, and one may be dispensed with without impairing the claim or patented device. The patentee, by putting it in as an element of the combination, makes it essential. Take it out, and you no longer have the combination of the patent. If invention is involved in joining the two, then, within the cases cited, there is no equivalency. Here claim 2 of the patent in suit has as its second element "a band movable longitudinally in either direction," etc. These words "movable longitudinally" are not merely descriptive of the band, but show an essential mode of putting the band into the combination, attaching it to, or connecting it with, the other elements to make an operative device or apparatus. Unless so movable, the recorder is wholly inoperative. Such a band defendant does not use. If the two rollers, D, D', are not an essential part of the second element of claim 1 of the patent in suit, then we have simply a band in the combination designed to be put in, printed on and removed like the sheet of paper in a typewriter, and it becomes a fugitive element,

not a proper element of a patentable claim. Morgan Envelope Co. v. Albany Co., 152 U. S. 425, 14 Sup. Ct. 627, 38 L. Ed. 500; Stearns v. Russell, 85 Fed. 218, 225, 29 C. C. A. 121.

Here claim 2 of the patent in suit has another element, "a·platen actuated by said lever and pressing the band into contact with the time-printing wheels as set forth." Such a platen defendant does not have. It has one roller on which a band not movable longitudinally is wound, and there is no platen whatever in the sense of the patent, for the reason that in defendant's construction and mode of operation and printing a platen is wholly unnecessary. The roller carrying the band is all-sufficient. Defendant dispenses wholly with one roller, the platen, and much mechanism necessary for the operation of that platen. It substitutes nothing. Defendant requires no substitute, no equivalent. It, by changes of mechanical means and a different mode of operation, a change in the idea of means, makes one roller do the work of two rollers and a cumbersome and involved platen. Defendant may infringe the Dey patent, No. 522,784, if it be valid; but that question is not in this case. No such claim is made in the bill of complaint herein.

There is great doubt that John Dey invented the recorder of the patent in suit; but I cannot say it is established beyond a reasonable doubt that F. E. Cable, and not John Dey, was the inventor. The payment to Cable of $1 in addition to his wages on every machine made is an important circumstance; but he was quiet, and allowed Dey to take out the patent in his own name, and has been silent since. What others "understood" is hardly evidence that Cable was the inventor. But it is unnecessary to pursue that feature of the case. I have fully canvassed the prior art, which shows Dey to be but a mere improver in the art, and not entitled to a broad range of equivalents. This is emphasized by the fact his patent is for a mere combination, where the range of equivalents is much narrower than in other cases. 1 Robinson on Patents, §§ 254, 255; Carter M. Co. v. Hanes (C. C.) 70 Fed. 859; Duff Mfg. Co. v. Forgie, 59 Fed. 772, 8 C. C. A. 261.

Defendant does not infringe. There will be a decree dismissing the bill of complaint, with costs.