STOCKHAM et al. v. DUNCAN.

DUNCAN v. STOCKHAM et al.

(Circuit Court of Appeals, Seventh Circuit. May 20, 1915. Rehearing Denied July 28, 1915.)

Nos. 2158, 2162.

1. PATENTS ☞328—INFRINGEMENT—COAL WASHER.

The Stewart patent, No. 657,184, for a coal washer, consisting of various means in combination, the last element used in the process being a settling tank, in which the fine coal dust carried over in the water from the preceding tank is allowed to settle, so as to cleanse the water for re-use, and from which it is pumped to the initial tank, *held* not infringed by washers from which such element of the combination is omitted, and which have no equivalent therefor.

2. PATENTS ☞312—SUIT FOR INFRINGEMENT—DAMAGES RECOVERABLE.

Where the evidence on an accounting in an infringement suit showed that if complainant had built the infringing plant under its patent, which was for a combination of elements all of which were present in the infringing structure, it would have realized a certain sum as a net profit therein, it is entitled to recover such sum as damages without an apportionment.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 544–549; Dec. Dig. ☞312.

Accounting by infringer for profits, see notes to Brickill v. Mayor, etc., of City of New York, 50 C. C. A. 8; Clark v. Johnson, 120 C. C. A. 389.]

Appeals from the District Court of the United States for the Southern Division of the Southern District of Illinois; J. Otis Humphrey, Judge.

Suit in equity by William H. Stockham and the Roberts & Schaefer Company against James Duncan and others. From final decree after an accounting, both parties appeal. Affirmed on each appeal.

For convenience, the appellants in said cause No. 2158 and appellees in said cause 2162 are herein termed complainants, and the appellees in cause 2158 and appellants in cause 2162 are termed defendants. In pursuance of the opinion of this court in Duncan et al. v. Stockham et al., 204 Fed. 781, 123 C. C. A. 133, and the order entered in said cause, affirming the decree of the District Court entered January 5, 1912, holding patent No. 657,184, granted to E. A. Stewart on September 4, 1900, for a coal washer, to be valid and infringed, said cause proceeded to an accounting as against all the defendants, both corporate and individual, before the master. On the hearing complainants proceeded to introduce evidence as to instances of alleged infringement other than that of the Lumaghi plant involved in the said suit. The one

claim of the patent reads as follows, viz.: "The combination in a coal washer of a vertically reciprocating jig $H$, provided with a perforated bottom $J$, metallic sliding joints $S$, $T$, on its sides, water tank $C$, with inclined bottom, perforated bucket elevator $G$, tank $D$, elevator $O$, tank $E$, centrifugal pump $P$, tank $B$, opening $Q$ between tanks $B$ and $C$, valve $R$ to close opening $Q$, substantially as described."

The evidence shows conclusively that none of the washers, except the one described in the bill, known as the Lumaghi plant, included the tank $E$ as a part of its combination. In operation a so-called jig discharges the clean coal into tank $D$. The surplus water from tank $D$ overflows into tank $E$, from which it is pumped back into tank $B$, whereby a constant circulation of water is secured. The tank $D$ is separated from tank $E$ by a partition somewhat lower than the other walls of the tank, over which partition the water flows slowly in a wide, thin stream into tank $E$. The theory seems to be, that there is thus secured in tank $E$ a quiet body of water from which the coal dust will readily settle to the bottom, leaving clear water to be pumped back to tank $B$ for re-use in washing the coal. In the process, the heavier coal is collected in tank $D$ by means of the partition wall between the two tanks. In the patent, and in the evidence, and in the former opinion of this court sustaining the patent, the tank $E$ is treated as an essential element of the combination. The master and the District Court came to that conclusion and held that none of the devices, save that of the Lumaghi plant, was an infringer. Complainants made no claim for profits, but only to damages growing out of loss of, and upon contracts for the construction of, the several alleged infringing and other plants, by reason of said alleged infringement. With reference to the Lumaghi plant, defendants attempted to show that at the time this plant was built it had no tank $E$, but that at the time the original bill was filed tank $E$ had been added, so that, while infringement did actually exist when the suit was brought, still at the time it was first built said washer was not an infringement. The record shows that the Lumaghi people were demanding a Stewart washer, that the first washer sold them was unsatisfactory, that they insisted on a change, and that defendants made the infringing change before they received payment.

It is in evidence that the Lumaghi washer contained four jigs and that in furnishing these complainants would have netted a profit of $1,250 each therefor, or a lump sum of $5,000. The master was of the opinion that there were involved in the construction of the Lumaghi device, and included in the items of cost and profit realized thereon, a number of items which were not covered by the patent, and that it was the duty of complainants to have apportioned the profits arising from the contract for the erection of the Lumaghi plant, so far as the same were covered by the patent, and such as grew out of the rest of said coal washer, which complainants, he found, had failed to do, and that therefore, under the authority of Westinghouse v. N. Y. Air-Brake Co., 140 Fed. 547, 72 C. C. A. 61, they could recover only nominal damages in that case.

On the hearing before the District Court upon exceptions to the master's report, the District Court sustained the exception to so much thereof as found that complainants should have apportioned the damages as aforesaid, and were, because of their failure so to do, not entitled to substantial damages as to said Lumaghi plant, but confirmed said report in all other respects. The decree of the District Court recites that the Lumaghi plant order was given because it contained the washer of the patent, that the Stewart washer was the heart of the plant and induced the trade, and that complainants' damages should be measured by the profit they would have made on the entire order, and therefore entered a decree against defendants for the sum of $5,000. From this decree these appeals have been prosecuted.

The errors assigned by complainants are in substance that the court erred in not allowing complainants $7,400 on account of the Lumaghi plant, in not holding that all the other plants erected by defendants were infringements of the patent, in not allowing complainants $13,088 on account of their losses due to reduction of price on three particular contracts referred to, in not allowing complainants the actual damages which they suffered on account of

their failure to obtain three other contracts, in not allowing complainants $1,250 per jig on the remaining jigs, or all the jigs, erected by defendants, and in not allowing the complainants a total sum of $74,908.

Defendants assign for error the entry of the judgment for $5,000 and costs and the holding of them jointly.

Francis W. Parker, of Chicago, for appellants.

Thos. A. Banning, of Chicago, Ill., for appellees.

Before BAKER, KOHLSAAT, and MACK, Circuit Judges.

KOHLSAAT, Circuit Judge (after stating the facts as above). [1] The patent in suit is for a coal washer consisting of various means in combination for washing coal and separating it from impurities. In the process, tanks are used, the last of which in the order of use in the process is termed tank $E$, the function of which is to purify the water—a so-called settling tank, wherein the water is practically at rest, whereby the coal dust held in solution, being heavier than water, sinks to the bottom, leaving the water pure enough for re-use. This water is then pumped back to the tank $B$ and again put into the washing process. Tank $D$, which immediately precedes tank $E$ in the washing device, receives the washed coal and whatever of impurities accompany it to that point, and retains substantially all thereof except the particles held in solution. The two tanks are separated by a partition somewhat less in height than the other walls of tank $D$, by reason whereof the top of the water in tank $D$ overflows in a thin and wide stream into tank $E$. Thus it will be seen that the only function of tank $E$ is to cleanse the water for re-use and deliver it to the pump for return to the tank $B$.

Complainants, in the proceedings before the master, undertook to show damages sustained by reason of defendants' installation of several coal washers other than that of the Lumaghi plant, being the device named as the infringing washer in the original bill, the names of which need not here be enumerated. This they might properly do. Murray v. Orr & Lockett Hardware Co., 153 Fed. 369, 82 C. C. A. 445, decided by this court. On the hearing it developed conclusively that no one of said other devices contained the tank $E$. In each of them the tank corresponding to the tank $D$ was made to do the work of both tanks, so far as it was done. Thus one element of the combination of the patent was wanting, unless a plain and well-known equivalent was substituted. The evidence disclosed that in some cases the defendants' substitute for tank $D$ was constructed with larger dimensions than in the patent, so that the inpour of water into the front end of said tank was some distance from the pump outlet, giving the coal dust in the water in said tank some opportunity to settle, while in other instances there was little, if any, difference in the size of the tank $D$ of the patent and that of the devices omitting tank $E$.

Complainants insist that defendants' tank is the equivalent of their two tanks, $D$ and $E$, since by its alleged increased volume of water it secures the measurable purification of the water for re-use; but the evidence fails to show that defendants' tank is larger than complainants', or that defendants' tank is an equivalent for complainants' tanks $D$

and *E*. Moreover, it is to be observed that in the Stewart patent no dimensions of tank *D* or *E*, either absolute or relative, are specified or claimed. It appears from the record that defendants' washer fails to produce as good results as complainants', and in substance only utilizes complainants' patent washer up to and including tank *D*. Thus we are driven to the conclusion that the so-called other devices lacked one element of the combination of the patent in suit, and one that complainants and the patentee make essential to their device. This omission was fatal to complainants' claim of infringement as to these coal washers.

"Our law requires the patentee to specify particularly what he claims to be new, and if he claims a combination of certain elements or parts we cannot decree that any one of these elements is immaterial. The patentee makes them all material by the restricted form of his claim. We can only decide whether any part omitted by an alleged infringer is supplied by some other device or instrumentality which is its equivalent." Water Meter Co. v. Desper, 101 U. S. 332–336, 25 L. Ed. 1024.

The rule has been uniformly enforced by the Supreme Court. In Rowell v. Lindsay, 113 U. S. 102, 5 Sup. Ct. 510, 28 L. Ed. 906, it is said:

"There can be no infringement unless the combination is infringed. * * * But this rule is subject to the qualification that a combination may be infringed when some of the elements are employed and for the others mechanical equivalents are used which were known to be such at the time when the patent was granted."

In Eames v. Godfrey, 1 Wall. 79, 17 L. Ed. 547, the court held that where a person uses all the elements of a combination patent but one, and for that one substitutes another mechanical structure, substantially different in its construction and operation, but serving the same purpose, he does not infringe. To the same effect is Gould v. Rees, 15 Wall. 194, 21 L. Ed. 39. That two machines produce the same effect will not justify the assertion that they are substantially the same. Burr v. Duryee, 1 Wall. 572, 17 L. Ed. 650. To the same effect are Vance v. Campbell, 1 Black, 428, 17 L. Ed. 168; Gill v. Wells, 22 Wall. 26, 22 L. Ed. 699; Robinson on Patents, § 922.

In Gill v. Wells, supra, the court says:

"By an equivalent in such a case it is meant that the ingredient substituted for the one withdrawn performs the same function as the other, and that it was well known at the date of the patent securing the invention as a proper substitute for the one omitted in the patented combination."

As above stated, the washers omitting tank *E* do not accomplish the same result as does the patent. We are therefore of the opinion that the master and the District Court properly held those washers to be noninfringing.

[2] With regard to the damages to be assessed in the matter of the Lumaghi plant, the record shows that complainants' witness Schaefer, one of the owners of the Stewart patent, had, on the hearing before the master, testified that, taking the entire volume of the business of manufacturing under the patent, there was realized a profit of about $1,250 per jig, or the lump sum of $5,000 for the four jigs of the

Lumaghi plant. We are of the opinion that the profits which would have been realized by complainants upon the construction of the Lumaghi coal-washing plant, but for the infringement, would have been the sum of $5,000, and that the evidence shows that such damages were incapable of apportionment. Westinghouse Co. v. Wagner, 225 U. S. 604, 32 Sup. Ct. 691, 56 L. Ed. 1222, 41 L. R. A. (N. S.) 653; Dowagiac Manufacturing Co. v. Minnesota Moline Plow Co. et al., 235 U. S. 641, 35 Sup. Ct. 221, 59 L. Ed. 398, decided by the Supreme Court January 11, 1915. Defendants, however, insist that infringement had not arisen at the date of the building of the Lumaghi plant.. As to this point it seems that while defendant took the contract to erect this plant with the intention of leaving off tank E, the owners were demanding a Stewart device, and that, before payment was made, defendants were required to and did add tank E. The District Court found that defendants should be charged with infringement as of the time when the contract was entered upon for the purposes of arriving at said damages. This we deem the correct position to be taken with regard to this item of damages.

Defendants further contend that there is nothing in the record to justify the judgment against the individual defendants. The objection, if good, comes too late. The original decree and the order remanding the cause both run against all of the defendants. However, upon the record, we discover no reason why, under the circumstances of this case, such a decree was not properly entered. The objection is not deemed well taken.

We find no reversible error in the judgment of the District Court. The decree of the District Court is therefore affirmed as to both appeals.