# BLACK DIAMOND COAL MINING COMPANY *v.* EXCELSIOR COAL COMPANY.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF CALIFORNIA.

No. 200. Argued January 30, 1895. — Decided March 4, 1895.

If there be any invention in the machine patented to Martin R. Roberts by reissued letters patent No. 7341 for an improvement in coal screens and chutes, dated October 10, 1876, (upon which the court expresses no opinion,) it is clear that it was not infringed by the defendant's machine.

The court takes judicial notice of the fact that hoppers with chutes beneath them are used for many different purposes.

THIS was an action at law by the Excelsior Coal Company to recover damages for the infringement of reissued letters patent No. 7341, granted October 10, 1876, to Martin R. Roberts for an " improvement in coal screens and chutes."

It seems, by the statement of the patentee, that, previous to this invention, in unloading vessels of coal, the coal had, for the most part, been hoisted from the hold, over the bulwarks, and dumped upon the wharf or upon the coal previously dumped, or, if chutes were used, such chutes were fixed ; nor, so far as the patentee was aware, had a movable chute ever been known or used by which the coal could be received from the vessel at any point on the wharf and be screened and delivered to the cart. The patentee further states in his specification : " My invention consists of a portable apparatus for receiving coal from the bucket, by which it is hoisted from the ship, and for screening and delivering it to carts on the wharf, said apparatus being adapted for ready removal from place to place when required."

"By this apparatus I am able to save repeated handlings and consequent expense and the breakage of the coal, and the apparatus can be changed from one point to another where the vessel may be placed."

The invention is shown in the following drawing :

The invention in question consisted substantially of a strong frame (A) surmounted by a hopper (BB'), in the form of a trough, into which the coal is dumped from the hoisting buckets.  The coal falls through the hopper upon an inclined screen (D), whose meshes, constructed of horizontal wires, are coarse enough to detain only the larger lumps, which accumulate in a reservoir (O), formed by the screen on one side, and three inclined surfaces on the other.  This reservoir is in fact a secondary hopper, at the bottom of which is located a chute (F), and a gate (*h*) through which the large coal is drawn off as required into the cart or other vehicle.  The smaller coal, which passes through the meshes of the screen (D), falls upon a second inclined screen (I), standing transversely to the upper one, whose meshes are finer than the other.  The coal is again sifted by this screen into two grades, the coarser of which is discharged down the incline at one side of the machine, while the finer falls through the meshes upon the floor or wharf beneath the frame.

The patentee further added in his specification : " The frame

(AA) will be mounted upon small wheels, so that it can be moved from one place to another upon a wharf, in order to be placed in position to receive the discharging cargo of different ships; but when moving it from one wharf to another, I employ axles across each end of the frame, upon which strong wheels are placed, so that the entire machine can be drawn along similar to any vehicle. . . . When it is not desired to screen the article or substance to be unloaded, a false bottom or metal blank (K), is placed upon the grating or inclined side (D) of the reservoir, so that the substance will be carried directly through the chute into the cart or wagon intended to convey it away."

Plaintiff relied upon an infringement of all the claims of the patent, which read as follows:

"1. A portable combined coal-receiving, screening, and delivering apparatus arranged to receive the coal or other cargo from a swinging suspended tub or bucket, by which it is hoisted from the hold of a ship or other water-craft, and to screen it automatically and deliver it into carts, said apparatus being constructed and arranged substantially as described.

"2. The receiving hopper BB', in combination with the reservoir O, with its screen or grating side D, chute F, with its toothed gate h, and one or more independent screens, I, all combined and arranged substantially as and for the purpose above described.

"3. The metal blank or false bottom K, in combination with the receiving hopper BB', reservoir O, chute F, and gate h, substantially as and for the purpose above described.

"4. The combination or the hopper BB', for receiving the coal from a swinging bucket, the reservoir O, arranged to receive the coal as it passes from the hopper, with the chute F and gate h, all constructed to operate substantially as and for the purpose set forth.

"5. In combination with the elongated hopper, the screen D, reservoir O, and chute F, with its gate h, the combination being substantially as is herein set forth."

The case was tried before a jury, and resulted in a verdict of $8830.90 for the plaintiff, upon which a judgment was subse-

quently entered. To review this judgment the Black Diamond Coal Mining Company, defendant therein, sued out this writ of error.

*Mr. M. M. Estee* for plaintiff in error.

*Mr. Charles R. Miller* for defendant in error. *Mr. John L. Boone* was on his brief.

MR. JUSTICE BROWN, after stating the case, delivered the opinion of the court.

There are thirty-nine assignments of error in this case, but in the view we have taken, it will only be necessary to consider the twenty-first, which is : "That the court erred, [in refusing] upon the close of all the testimony in the case, and upon the request of the defendant's counsel, to instruct the jury to render a verdict in favor of the defendant."

The patent in question is for a portable coal screening device which may be moved to any place on the wharf where a vessel happens to be discharging her cargo. The portability of the device, however, is not mentioned in any of the claims except the first, which also includes the screen as an element of the combination. The coal is hoisted from the hold of the vessel in buckets or tubs, which are swung over the machine, and the coal dumped into the hopper, through which it falls upon the first screen and lodges in the reservoir until required for use, when the coarser coal slides down upon a chute, having an outlet or gate, through which it is withdrawn into carts. The finer coal falls through the first screen upon a second, where it is again sifted, the coarser sliding down to the side of the machine, the finer falling through the meshes upon the wharf, directly beneath the hopper.

The defendant also uses a portable machine consisting simply of a square hopper, of the form ordinarily used in grist mills and elevators, through which the coal of all sizes falls directly upon a chute having an outlet or gate toward, but some distance from, the bottom, which can be raised or lowered at pleasure, and through which the coal is withdrawn

as required. There is no provision whatever for screening the coal shown in the drawings of defendant's chutes put in by one of plaintiff's witnesses, nor in his model introduced as an exhibit.

As the combinations described in the first, second, and fifth claims of the Roberts patent include a screen or screens as an element, it is entirely clear that the defendant's machine, as above described, does not infringe those claims.

The third claim includes the metal blank or false bottom (K), in combination with the receiving hopper (BB'), reservoir (O), chute (F), and gate (h), the fourth claim, the combination of the hopper, the reservoir, the chute, and the gate, differing only from the third in the omission of the metal blank or false bottom.

Now, in determining the question of patentability raised by the twenty-first assignment of error, we are to take into consideration only the device alleged to be infringed. Granting for the purposes of this case that the combinations set forth in the first, second, and fifth claims, of all of which the screens are an element, constitute a patentable invention, it does not follow that, if these screens be omitted, as they are by the substitution of the false bottom or metal blank (K) in lieu of the upper screen, this machine, which is the only one alleged to be infringed by the defendant, contained a patentable combination. Eliminate the screens by the substitution of the false bottom, and there is nothing left but an elongated hopper, a reservoir beneath, a chute, and a gate. Hoppers with chutes beneath them have been used for a dozen different purposes, but principally for grain elevators, by means of which vessels lying alongside a wharf are loaded in a fraction of the time required by hand or animal power. Indeed, these devices are so common that we think judicial cognizance may be taken of them. *Brown* v. *Piper*, 91 U. S. 37; *Terhune* v. *Phillips*, 99 U. S. 592; *King* v. *Gallun*, 109 U. S. 99; *Phillips* v. *Detroit*, 111 U. S. 604.

If there be any invention at all, then, in the combinations specified in the third and fourth claims, it is in the introduction of the reservoir (O) beneath the hopper, which is really

an enlargement of the chute, for the purpose of affording a lodgment for the coal until it is drawn off for use. Great stress was laid by plaintiff's counsel upon this feature of the invention, but even conceding it to be patentable, there is nothing corresponding to it in the defendant's machine. On the contrary, the coal falls through a square opening in the bottom of the hopper, directly upon the chute, where it is detained by a gate, which is kept closed until the coal is withdrawn. It is evident that the hopper itself is substantially the only reservoir, although a small amount of coal is necessarily detained in the upper part of the chute until the gate is raised. The chute is nowhere enlarged to form a reservoir.

The fact that the machine is portable undoubtedly adds to its usefulness, but its portability is only made an element of the first claim, of which the screens are also an element. So that if portability were itself a patentable feature, which it is not, (*Hendy* v. *Miners' Iron Works*, 127 U. S. 370,) there is no infringement of the first claim, as the defendant does not use the screens.

There was some evidence tending to show that one of the machines used by the defendant was provided with a chute, the bottom of which consisted of a screen, and that it was used until about the time this suit was brought, when the screen was covered over with planking and the bottom of the chute made solid. This machine doubtless approximated more closely to that described in the plaintiff's patent. No attempt, however, was made to separate the damages arising from the use of this device from those arising from the use of the chute with the solid bottom. The trial appears to have proceeded largely upon the theory that there was no distinction between the two devices. The court instructed the jury that the plaintiff's patent was not limited to a device in which a screen is one of the elements, and that if they found that defendant had used a device substantially identical with the device shown in the patent, but having a solid bottom to the reservoir, and a chute which extends from the receiving hopper instead of having a screen bottom, that such device was also covered by the patent and was an infringement.

An exception was taken to this portion of the charge, and the twenty-fourth assignment of error was intended to cover it. For the reasons given above, we think the court erred in its interpretation of the patent. If there was any invention at all disclosed, it was in the use of the reservoir and the screening device, and without expressing an opinion upon this point of patentability, it is clear .that no infringement was involved in the use of defendant's hopper and chute, with or without a solid bottom, if for no other reason, because it lacked the reservoir of the plaintiff's patent.

There was no question to go to the jury in the case, and the court should have directed a verdict for the defendant.

The judgment of the court below is, therefore,

*Reversed, and the case remanded with directions to set aside the verdict and grant a new trial.*