## WILLIAM B. SCAIFE & SONS CO. v. FALLS CITY WOOLEN MILLS.

(District Court, W. D. Kentucky. January 18, 1912.)

1. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—WATER-PURIFYING APPARATUS.

The Greth patent, No. 775,901, for a water-purifying apparatus, is void for anticipation or for lack of patentable invention in view of the prior art which disclosed all of the elements of the combination in practically similar combination, requiring no more than mechanical skill to make the improvements claimed; also, held not infringed, if conceded validity.

2. PATENTS (§ 246*)—INFRINGEMENT—IMPROVEMENT PATENTS.

A patent for an improved combination of old elements is limited to the very combination shown, and is not infringed by a new combination in which any one of its elements is omitted and no mechanical equivalent substituted; and in such case the range of equivalents is narrow.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 387; Dec. Dig. § 246.*

Patentability of combination of old element as dependent on results attained, see note to National Tube Co. v. Aiken, 91 C. C. A. 123.]

In Equity. Suit by the William B. Scaife & Sons Company against the Falls City Woolen Mills. On final hearing. Decree for defendant.

F. W. H. Clay and H. D. Newcomb, for complainant.
Arthur M. Hood and John B. Baskin, for defendant.

EVANS, District Judge. This action is based upon an alleged infringement of letters patent No. 775,901 applied for on February 12, 1904, and granted on November 22d of that year to John C. W.

Greth, assignor to W. B. Scaife & Sons Company. Twelve claims are made in the patent, but at the hearing the complainant distinctly disclaimed all demands for relief except those based upon claims Nos. 10 and 11, and rather insisted upon relief under the latter only. However, we do not feel at liberty to dismiss claim 10 from consideration, although we do so as to all the claims of the patent except 10 · and 11. The complainant at the hearing also disavowed any claim to any form of relief except an injunction against further infringement.

The defendant in its answer, after denying all charges of infringement, set up several defenses, statutory and otherwise, which, so far as the testimony made them important, may be shortly stated as follows: (1) That Greth was not the original and first inventor or discoverer of any material part of the thing patented; (2) that, in view of the state of the art at the time the patent was applied for, the patent discloses no patentable invention, and is therefore void; (3) that the alleged improvements constituting the subject-matter of the patent did not amount to invention, but were the result of ordinary mechanical skill; and (4) that prior to Greth's invention and the improvements covered by the patent the same, in all patentable respects, had been anticipated by other patents and publications in the United States.

Other subordinate and incidental questions arise upon the testimony, but those we have indicated are fundamental.

Coincidentally with the examination of many authorities the court has industriously read and has carefully considered the pleadings, the testimony (which is made up largely of the instructive observations of the expert witnesses accompanied by the usual conflict among them), and the able and interesting arguments of counsel. The court will not, however, undertake to state its views with any degree of elaboration, but will confine itself, for the most part, to a statement of its conclusions, and, very briefly, the grounds therefor.

### The Patent.

[1] In his petition for a grant of letters patent Greth says that he has—

"invented certain new and useful improvements in water-purifying apparatus, of which the following is a specification:

"My invention relates to water purification by means of chemicals, and the treatment of waters such as hard water which requires softening by removing certain elements such as bicarbonates and certain impurities to be precipitated preparatory to filtering the same, the invention being particularly designed to provide a compact and efficient means for mixing a softening chemical such as milk of lime, and then treating with a chemical such as soda for precipitation of the impurities and settling the water and then filtering the same, all in a continuous flow system. The objects of the invention are to provide a convenient apparatus for continuous treatment of water for softening, and precipitating impurities before filtration; to provide a superior form of vessels for thoroughly mixing milk of lime with water, and for mixing such chemicals as soda with the water after lime treatment; to regulate the soda treatment; to provide a compact and convenient apparatus in which the operations are continuous and rendered more efficient, and to generally improve the structure and operation of water-purifying apparatus. These objects, and other advantages which will hereinafter appear, I attain by means

of the apparatus illustrated in preferred form in the accompanying drawings. * * * Having thus described my invention and illustrated its use, what I claim as new, and desire to secure by letters patent, is the following: * * *

"10. In water-purifying apparatus the combination in a single tank 8 of the various compartments for lime treatment and soda treatment and water settling, the settling tank being fed directly from the treatment tank and having an inclined bottom therein below the opening from the treatment tank, and having a filter at the top of the settling tank fed by overflow from said tank, substantially as described.

"11. In continuous flow water-purifying apparatus, the combination with a single tank containing the chemical reacting compartment, and an upward-flow settling compartment, of a series of independent gravity filters carried on the top of the tank, fed by overflow from the settling compartment, and each having means for washing the filter and a valve to close communication with the settling compartment, whereby any one of said filters may be isolated and washed, while the flow continues through the others from said supporting tank."

It will be observed that claim 10 specifies a single tank 8 meant, we suppose, to be known as the "treatment tank," in which are combined various compartments for lime treatment, soda treatment, and water settling, and then a second tank, called a "settling tank," which is to be fed from the treatment tank, the former having a filter at its top. Here two tanks, several compartments, and one filter apparently are called for.

It will also be observed that claim 11 specifies only a single tank containing the chemical reacting compartment and an upward-flow settling compartment and a series of gravity filters carried at the top of the tank, the filters to be fed by the overflow from the settling compartments, and each of which filters can be separately washed by means of an arrangement of valves. Here we have one tank with various compartments in it, and a series of filters are specified to be placed at the top of the tank.

The structure shown by the drawings accompanying the patent is somewhat elaborate, showing various boxes, weirs, and pipes indicating the mechanical arrangement of the structure which the patent calls for.

These claims may be even more briefly analyzed as follows, namely:

Claim 10 is for a combination made up of the following elements: In a tank 8: A lime treatment compartment; a soda treatment compartment; a water settling tank fed directly from the treatment tank and having an inclined bottom therein below the opening from the treatment tank; and a filter at the top of the settling tank fed by overflow from said tank.

Claim 11 is made up of the following elements: A single tank containing the chemical reacting compartment and an upward-flow settling compartment; a series of independent gravity filters carried on the top of the tank, fed by overflow from the settling compartment and each having means for washing the filter and a valve to close communication with the settling compartment, whereby any one of said filters may be isolated and washed, while the flow continues through the others from said supporting tank. This claim does not recite the separate lime treatment and soda treatment compartments, specifying only "the chemical reacting compartment."

Literally there would appear to be some difference in the two claims as to the number of tanks as distinguished from other devices in the apparatus—claim 10 naming two and claim 11 only one—but we think the difference is in form rather than in substance. As claim 11 is complainant's chief reliance, and, as it unmistakably calls for a single tank, we shall adopt that view in further considering the case, and regard the apparatus as containing a single "tank," embracing several "compartments," "boxes," "weirs," etc. The patent does not, of course, by any means cover a pioneer invention in water-purifying apparatus. Manifestly it is not a process patent. Clearly the patent was granted for what were claimed to be improvements, and upon new combinations of old and well-known elements or devices. Neither a tank with compartments through which water (controlled and diverted as desired by weirs, pipes, etc.) may pass from one to the other—nor the use for purifying purposes of lime and soda, nor weirs, nor boxes, nor valves, arranged to control the flow and current of water, nor sand filters wherever located or whether singly or in series, can of themselves be regarded as at all novel in water-purifying apparatus. We apprehend that the utmost that can be successfully claimed for complainant's patent is that those old devices are arranged and combined in a new, useful, and inventive manner.

Saying that the complainant's apparatus is for a continuous water-purifying apparatus, the view of the subject expressed by complainant's expert, Handy, is that Greth's patent constituted an improvement over the prior art in respect to compactness of apparatus and thoroughness of the water-softening operation for which it provided. (1) Compactness of the apparatus; (2) its convenient arrangement; (3) its being supported on one foundation; (4) the accurate means it affords for proportioning chemical treatment and securing a thorough mixture of the chemicals and the water; and (5) its capacity for absolutely continuous operation by means of a number of independent gravity filters are what Mr. Handy regards as the great advantages of Greth's invention. He also says that Greth, by providing a number of filters which can be properly cleansed one at a time without interfering with the operation of the others, has made his apparatus really capable of continuous operation and the production of properly clarified and softened water. He says, however, that:

"Greth does not claim multiple filters separately cleanable, except such as are of special construction and used in combination with other features of a continuous water softener."

He further says:

"Greth's invention lies in the combination of certain well-known principles or devices in a truly continuous and self-contained water-softening apparatus. It therefore seems of little consequence that witness Curtis should at length point out as not new those ideas or devices, which neither Greth nor any one else claimed to be new."

And, furthermore, he says:

"In the apparatus shown by Greth's patent 775,901, I consider as his special devices, first, the method of introducing and mixing the lime water with the hard water in a single-tank apparatus by the use of baffles arranged as shown and described, and further by the method of introducing and mixing

the soda solution after mixing with the lime solution. I consider, however, that the most important device introduced by Greth was that of placing his sand filters in or attached to the top of the tank and made in series so that they could be separately cleaned. * * * The special construction of the Greth filters lies chiefly in their arrangement in connection with the single-tank apparatus. They are supported by the top of the tank, and are readily accessible from the top. The arrangement of sand and of piping is what is usual in filters which are to be cleaned by reverse flow."

Further along he was asked:

"X Q. 43. And that arrangement of the sand and piping was usual at the time of the Greth invention, was it not? A. Generally speaking; yes."

What the witness Handy has said in commendation of Greth's patent is probably all that could be said in its praise, though it is not quite clear that he was always consistent in what he regards as its best features. It is certain, however, that some of the things he mentions might somewhat expand claims 10 and 11 of the patent, especially the former. Perhaps it is fair to conclude that he regards the chief merits of Greth's patent to be (1) that it provides a better contrivance for the work of the chemicals; and (2) that a better way is provided by the multiplication of gravity filters of a "special construction," placed at the top of the tank, for a continuous operation of the apparatus without having to stop it when one of the filters gets in bad condition. He explains, as we have just seen, that this "special construction" lies chiefly in the "arrangement" of the filters in connection with the single-tank apparatus.

The water to be purified after it comes in at the top of a compartment in one side of the tank is, as it descends towards the bottom, mixed with chemicals, in succession the one after the other, in two different but connecting parts of that compartment, the flow being retarded by baffles, by which mixture much of the undesirable substances the water contains are deposited, and afterwards the purified water, by the operation of natural laws, is forced upward in a compartment in the other side of the tank to a point at or slightly below the level of the place of its entrance, where it finds an exit through which it may flow on to the filters. These filters are made independent of each other by multiplication and simple mechanical arrangement. According to witness Handy in one statement, Greth does not claim multiple filters except those of a "special construction" and used in combination with other features. In another statement, as we have seen, he says the most important device introduced by Greth was placing his sand filters at the top of the tank. In short, the location of the filters at the top of the tank, and their being separate and independent of each other and being of a special but somewhat undefined construction, appear to be the substance of the merits claimed as constituting invention as distinguished from mechanical skill.

In the old art of devising water-purifying apparatus there always must be used chemicals of which lime and soda appear now to be regarded as among the most efficient. They must be applied to the water while it is passing through the apparatus. If the flow of the water is not retarded at certain points by means of some device, the chemicals cannot perform their perfect work. To regulate the flow

of the water or to detain it at some point, no novel device is found in the patent, however much old devices may have been fixed at new locations without, however, performing any particularly novel function. In several forms of apparatus there had been suggested and used an inclined bottom which furnished a good location for the reception of the substances deposited after the application of the chemicals, and from which point the purified water, being free from those substances, is forced upward to filters which complete the work. Probably there must be found in all water-purifying apparatus both treatment and settling tanks or compartments, and, where great quantities of water are to be treated, there must, of necessity, be either one very large filter or a series of smaller ones; the advantages of the latter being many and obvious, both in respect to repairing and cleansing. A multiplied series of filters unquestionably can easily be achieved by such devices as division walls, pipes, valves, stop-cocks, etc., which cannot be regarded as works of much difficulty to a skilled and intelligent mechanic. Besides, it is certain that in other apparatus based on earlier patents a plurality of sand filters had been located at the top, but whether or not they were attached in the same way as Greth did it does not appear to be very material.

There may in some respects be a decided improvement upon other water-purifying devices in Greth's device, but is that improvement so distinct an advance in the art as to be patentable, or should we not rather be governed by the ruling in cases like Morris v. McMillin, 112 U. S. 244, 5 Sup. Ct. 218, 28 L. Ed. 702, Roberts v. Ryder, 91 U. S. 150, 23 L. Ed. 267, Hotchkiss v. Greenwood, 11 How. 248, 13 L. Ed. 683, Atlantic Works v. Brady, 107 U. S. 192, 2 Sup. Ct. 225, 27 L. Ed. 438, and Richards v. Chase Elevator Co., 158 U. S. 299, 15 Sup. Ct. 831, 39 L. Ed. 991, which seem clearly to indicate that we should hold that Greth's production was the result of mere mechanical skill exerted after a study of the prior art? In a most industrious effort we have not been able to find in Greth's patent anything which we conceive, under the guidance of the cases cited, to be invention in the sense of the patent laws.

## Anticipation.

Preliminarily we may observe that Greth's claim that he conceived (though he did not perfect) his invention in 1902 and 1903 is entitled to little weight. While he repeatedly says that he showed his drawings to one H. C. Blackwell in 1903, and talked them over with him, Blackwell was not called as a witness, nor was any explanation made of the omission. Greth in testifying was somewhat pressed by the disclosures of the Paterson British patent and the date of its filing in the Patent Office, viz., June 16, 1903, and we have not been convinced by his testimony in reference to the time he conceived the things actually patented. In this connection what was said in Eck v. Kutz (C. C.) 132 Fed. 758, 763, and Thayer v. Hart (C. C.) 20 Fed. 693, may be very pertinent. Furthermore, and especially as some of Greth's claims were rejected in the Patent Office, we think the date of his invention must be confined to a time after January 1,

1904. In strictness February 12, 1904, might be the proper date, as the application was then filed, but we may concede a few weeks for the preparation of drawings and papers. We are led to this conclusion by the ruling in cases like Automatic, etc., Company v. Pneumatic Scale, etc., Corporation, 166 Fed. 288, 92 C. C. A. 206, inasmuch as if the invention was very long before January 1, 1904, due diligence was not used to adapt it.

Whatever may have been the value of Greth's earlier drawings and conceptions, and whether or not they may have been precursors of the conceptions actually covered by his patent, we think, in dealing with the question of anticipation, we must assume that they were of a date later than January 1, 1904, and in connection with a careful analysis of claims 10 and 11 we have considered the previous patents, and the publications in this country prior to that date; also we have considered the testimony of defendant's expert, Curtis, and have concluded that in all patentable respects the invention of Greth had been anticipated by various other patents or had been disclosed in previous publications in the United States. Of course, all the arrangements found in Greth's patent have not been found or collected in precisely the same form in any previous patent, but there does not appear to be any separate feature of it which had not been anticipated and in a general way so combined as to be practically capable of accomplishing the same results in an efficient manner. At all events, we think the anticipations were such as to negative the claim that Greth was the original and first inventor of the improvements in water-purifying apparatus described in the patent in suit or that there was any patentable invention covered by it. We think there was no particular novelty and no invention—nothing more than ordinary mechanical skill—in his aggregation and relocation of contrivances which expert witness Handy truly says were all old.

### Presumption of Validity.

The Patent Office being charged by law with the duty and being given the power to pass upon all applications for patents, the courts always prima facie presume that its action in granting a patent is correct. But this presumption has not been treated by the courts as conclusive, and the reports are full of cases in which the presumption was overcome and the patents held invalid. It is by no means certain that this has not been the result in a majority of the cases which have reached the Supreme Court. The reason must be that in many essential respects the hearing in the Patent Office is to a degree ex parte, and there must be a natural and altogether proper disposition there to give the applicant the benefit of all serious doubts.

In this case some of the most significant patents in the Patent Office apparently were not cited or referred to in the consideration of the petition for the patent in suit. This circumstance alone goes far to overcome the presumption of validity. Westinghouse, etc., Co. v. Toledo, etc., Co., 172 Fed. 392, 393, 97 C. C. A. 69 (C. C. A., Sixth Circuit).

We have reached the conclusion that the presumption has been overcome in this instance.

194 F.—10

### Infringement.

The issue as to infringement has been emphasized. The complainant's expert, Handy, testifies to the conviction that "the novel filter arrangement invented by Greth has been exactly reproduced by the defendant's apparatus." This very broadly stated conclusion is combatted by the other side. In considering the issue, we must, of course, bear in mind (1) that several claims asserted by Greth in his specifications were rejected in the Patent Office; and (2) that the invention he claims was asked for as an improvement upon other forms of combination of old devices. It results that his patent must be construed in connection with what took place in the Patent Office.

[2] Furthermore, it is a general rule that the improved combination for which a patent is granted must be limited by the elements therein specified. If the old elements were combined in a substantially different way, or if the purifying result be accomplished by a different combination in defendant's apparatus, there might be no infringement. In other words, patents for improved combinations must be construed strictly, there being no legal right to a monopoly in cases where there is a mere improved combination except in respect to what is substantially that very combination, the law leaving it open to all others to make any other combination of old things which is not substantially the same as the one described in the patent. We think this plainly results from the decisions in many cases, and, furthermore, we think the rule is particularly applicable to cases like this. After we had written to this point, there came from the clerk, in due course, a copy of the opinion of the Circuit Court of Appeals of this circuit in the case of the Union Paper Bag, etc., Company v. Advance Bag Company, 194 Fed. 126, decided January 3, 1912, in which the court, speaking through Judge Warrington, said:

"It is settled that a claim for a combination is not infringed if any one of the elements is omitted without substitution of an equivalent."

This proposition was based upon what the Supreme Court in an opinion by Mr. Justice Day had said in Cimiotti Unhairing Co. v. Am. Fur Refining Co., 198 U. S. 410, 25 Sup. Ct. 702, 49 L. Ed. 1100, as follows:

"In making his claim the inventor is at liberty to choose his own form of expression; and, while the courts may construe the same in view of the specifications and the state of the art, they may not add to or detract from the claim. And it is equally true that, as the inventor is required to enumerate the elements of his claim, no one is an infringer of a combination claim unless he uses all the elements thereof. Shepard v. Carrigan, 116 U. S. 593, 597 [6 Sup. Ct. 493, 29 L. Ed. 723]; Sutter v. Robinson, 119 U. S. 530, 541 [7 Sup. Ct. 376, 30 L. Ed. 492]; McClain v. Ortmayer, 141 U. S. 419, 425 [12 Sup. Ct. 76, 35 L. Ed. 800]; Wright v. Yuengling, 155 U. S. 47 [15 Sup. Ct. 1, 39 L. Ed. 64]; Black Diamond Co. v. Excelsior Co., 156 U. S. 611 [15 Sup. Ct. 482, 39 L. Ed. 553]; Walker on Patents, § 349."

It may also be remarked that in such cases the range of equivalents is narrow.

The testimony is not so full nor so frank as we could wish respecting defendant's structure, but the onus of showing infringement rested upon the complainant who charged it, and it follows that the defend-

ant may demand that the complainant shall meet that burden. When the patent in suit is subjected to the limitations and tests fixed in the authoritative decisions of the courts, the testimony does not show that it has been infringed either in respect to claim 10 or in respect to claim 11. While this phase of the discussion is not very material, inasmuch as we have concluded that the patent is invalid, nevertheless it may be well to recall in this connection that complainant proved by the witness Handy, in substance, that Greth's special devices are (1) the method of introducing and mixing the lime water with the hard water in one chamber in a single-tank apparatus by the use of baffles; (2) the method of introducing and mixing the soda solution after mixing with the lime solution (another chamber or part of the tank doubtless being required for this); and (3) the most important device introduced by Greth was that of placing his sand filters in or attached to the top of the tank in series so as to permit separate cleansing. The two first of these devices or elements which operate separately and in succession and apparently in different chambers or parts of the tank, do not appear in defendant's structure at all, as in it the lime and soda treatments are given at the same time and by an altogether different device. This was open to the defendant in its combination of old devices, and there was no infringement under the ruling in the two cases last referred to. The question as to the third of the important devices just pointed out thus becomes immaterial, though it may be added that the testimony does not satisfactorily show that even this device was used by the defendant in an infringing sense. We have already seen that there was no invention in the filters from the standpoint of the patent laws.

## Objections to Testimony.

Several parts of the testimony offered by the complainant consist of statements made in writing or otherwise by persons not parties to the action who were neither sworn as witnesses nor put in a position where they could be cross-examined, although, so far as the record discloses, they were within easy reach. We think that testimony can hardly be competent in this case under any principle of the law of evidence with which we are familiar. However, we have considered it, and have given such weight to it as it could have had, if competent.

It results that the bill must be dismissed with costs, and a decree accordingly will be entered.