## CHARLES T. WILT CO. et al. v. WILLIAM BAL CO.

(Circuit Court of Appeals, Second Circuit. January 12, 1921.)

### No. 83.

1. Patents ⊙328—880,058, for trunk, not infringed.

The Wilt patent, No. 880,058, for improvement in trunks of wardrobe type, *held* not infringed.

2. Patents ⊙246—Combination not infringed, where elements are omitted.

A patentee, who describes and claims a combination, cannot be heard to say that some of the elements described are nonessential, for the purpose of establishing infringement by one who omits such elements and does not, therefore, use the combination.

3. Patents ⊙328—1,000,654, for improvements in suspension fixtures for trunks, void for lack of invention.

The Wilt patent, No. 1,000,654, for improvements in suspension fixtures devised for trunks, *held* void for lack of invention.

Appeal from the District Court of the United States for the Southern District of New York.

Suit by the Charles T. Wilt Company and Elmer E. Wilt against the William Bal Company for infringement of patents Nos. 880,058 and 1,000,654. Decree for defendant, and complainants appeal. Affirmed.

Taylor E. Brown, of Chicago, Ill. (Ralph L. Scott, of New York City, on the brief), for appellants.

Charles Neave and Stephen H. Philbin, both of New York City, for appellee.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

MANTON, Circuit Judge. The patents for which this suit for infringement is brought are No. 880,058, for a certain new and useful improvement in trunks, and No. 1,000,654, for improvements in suspension fixture devices for trunks.

In the first patent, claims 3 and 10 are involved, and are as follows:

"3. The combination, with a receiving compartment, of a fixed, horizontal rail therein, an extension rail, a hinge directly connecting the latter rail with the fixed rail, and a hanger sustaining carriage, movable on said rails; the rails and hinge being arranged to constitute a continuous way for the carriage to permit it to be moved from one rail to the other."

"10. The combination, with a receiving compartment, of a fixed horizontal rail therein, an extension rail connected therewith and adapted to be folded into the compartment, perpendicular to the fixed rail, when not in use, a hanger sustaining carriage, supported by and movable on said fixed and extension rails, and a supporting standard hinged to the outer end of said extension rail and constructed to be folded inside the compartment parallel with the extension rail."

In the second patent, claim 1 is involved, and reads as follows:

"1. A trunk or compartment, having a rigid upper end and being open at the front, said upper end being higher along its longitudinal median line than at either side thereof, and a suspension device within said upper end and arranged beneath said longitudinal median line thereof."

⊙For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

It was held below that there was no infringement of any of the claims sued on, and the bill was dismissed.

It is conceded by the appellants that the invention is for an improvement in wardrobe trunks which is of a minor character. Therefore the invention, if any, is a narrow one. The patent in suit relates to a type of trunks which stand on end and are opened by lateral or sidewise movement of two parts, or sections, which are hinged together vertically. It is commonly known as a wardrobe trunk, having sliding drawers or trays for personal clothing in one of the swinging trunk sections. The other, usually a compartment without such sliding trays or drawers, is provided with clothes hangers, upon which garments may be suspended. Such trunks are used by traveling salesmen extensively to carry models or sample clothing without folding, and the wardrobe trunk is used as a convenient personal trunk.

It is claimed that the patentee was the first in the art to have provided the compartment of a wardrobe trunk with a cheap, strong, easily operable, and simple arrangement, which comprised a horizontally fixed rail in the upper part of the compartment, an extension rail hinged directly to the fixed rail, and so arranged as to constitute a continuous way, when the hinged extension is in prolongation of the fixed rail, whereby a carriage, to which the clothes hanger is attached, could move along both rails.

The improvement in patent No. 1,000,654, is claimed to be an improvement over the first patent in suit. It is claimed to involve a trunk which cannot be stood on its upper end, and in which a suspension device is located in the clothes compartment, so arranged as to minimize the space in the compartment, and thus provide desirable features. It is a construction having an open front compartment with a rigid gabled top end wall, with a suspension device arranged beneath the ridge of the gabled end wall. The alleged invention is not limited to the specific form of the upper end of the trunk, but is claimed to be of a broad and basic character. The idea of the invention seems to have been to add to the wardrobe trunk, with its fixed rail and its extension rail, a hanger sustaining carriage, movable on said rails, so arranged that this carriage can run on wheels whose track is inside the tubular fixed and extension rails, and the extension rail can telescope inside of the fixed rail, when the trunk is closed. The patent describes it as follows:

"An apparel support embodying our invention embraces, in general terms, a fixed rail $C$ located within the top of the compartment $B$ of the trunk, and extending from front to rear thereof, and designed to support a suitable carriage designated as a whole by $C^1$, which carries a plurality of hangers $C^2$, and an extension rail $D$, that is adapted to be extended horizontally from the fixed rail to support the carriage and hangers, as indicated in dotted lines in Fig. 3, and so constructed that when not in use, it may be contained wholly within the compartment $B$ as indicated in Fig. 1." Page 2, lines 5-18.

"Certain features of the construction, involved in the fixed supporting rail and its extension and the carriage for the garment hangers, embody portions of our invention." Page 2, line 41.

This carriage is described as follows:

"The carriage herein shown comprises an elongated loop $c^4$, which is swung from the lower ends of the hanging brackets $c^3$, and on the lower member of

which are suspended the hangers $c^2$. The bearings for said carriage within the tubular, slotted rails consist of axles $c^5$ mounted in transverse openings in the hanging brackets $c^3$, and provided at their ends with wheels $c^6$ $c^6$ engaging the interior surface of the tube. Preferably the wheels $c^6$ are made of vulcanized fiber or like nonresonant material, whereby movement of the carriage inwardly and outwardly on the rail produces no objectionable noise. The said wheels are beveled on their peripheries to correspond to the cylindric inner surface of the tube, as shown in Fig. 4, thereby providing ample bearing between said wheels and the tubular rail." Page 2, lines 81–100.

[1] Examining the two claims in the suit, 3 and 10, there is no substantial difference between them. There is this additional, in claim 10, the element of a supporting standard; but this does not affect the situation indicated in claim 3 of the appellee's structure. Assuming invention is what Wilt got up, we do not think the appellee infringes. There is no hanger suspending carriage in the appellee's trunk, and the appellants' carriage is not used by the appellee. The carriage for the garment hangers is absent in the appellee's trunk. The appellee does not employ the tubular slot rails, and does not employ the moveable carriage of the claims, but takes the ordinary familiar clothes hanger and hooks it over the rails. There is, therefore, no carriage. And in order to make the appellee's structure come within claims 3 and 10 of the appellants' device, it is necessary to find a hanger sustaining carriage.

[2] The patent, if valid, is for a combination, and, unless the combination is infringed, there is no infringement. Rowell v. Lindsay, 113 U. S. 97, 5 Sup. Ct. 507, 28 L. Ed. 906; Black Diamond Co. v. Excelsior Co., 156 U. S. 611, 15 Sup. Ct. 482, 39 L. Ed. 553. We are but adopting the language which the inventor chose to use in describing his invention. He is bound by the phraseology employed. It cannot now be added to or subtracted from. A defendant cannot be held to be an infringer of a combination claim, when he omits some of the elements of the combination; for, when he does so, he no longer uses the combination. It is no answer to insist that all of the elements are not essential, and that the combination operates as well without them. The patentee may describe his combination as he will; but, having done so, his rights must be protected, as must the rights of the public which are involved, in construing the claim by the language employed and no other.

[3] As to the later patent, it is apparent that the prior art anticipated all that is claimed by the patentee in claim 1. The detail of this patent is that the upper end of the trunk is of gable form, top wall raised, comprising oblique members. The inventor refers to his patent as "improvements in suspension fixtures devised for trunks."

It is claimed that one feature of the invention is the upper end of the trunk, the gabled form of top wall, comprising oblique members which meet to form a peak, and the advantages are said by the inventor to be that the trunk cannot be set up on its upper peaked end, thus avoiding the liability of clothing falling down and being wadded in the top of the inverted trunk, and preventing the hangers slipping off their supporting carriage in case the trunk is inverted. An additional advantage is the saving of weight and material, and providing a strong

and durable top wall construction. The hanger suspending carriage is the same as claimed in the prior patent in suit. Claim 1, as above quoted, refers to the gabled upper end and a suspension device beneath the ridge of the gable. If read without reference to the drawings and specifications, claim 1 would refer to any wardrobe trunk whose top is higher along its center line than it is at the sides.

This record discloses that there is nothing original in constructing a trunk that cannot be placed upside down. The article and pictures taken from the Ladies' Home Journal (article of February 19th) illustrate this. It also appears from the patent to Steiger, No. 791,226, where a trunk is shown with the conical block, which projects from the walls and serves to prevent the trunk being stood vertical on that end or in an upside down position. There is contained in that patent a claim of a suspension device arranged beneath the center line of the rounded top, but the suspension device is not found placed above the rectangular portion of the trunk. And in the patent to Yaeger, No. 479,485, a round top and the suspension devices underneath it, placed within the rounded portion and the concave space at the top, is thus utilized. In the Gilmore patent, No. 852,554, the clothes hanger is placed within the rounded top portion of the trunk when the trunk is closed, and, when the trunk is opened, the rack is tilted forward and downward, and the clothes may be moved outside. The claims of that patent provide for a suspension device within said upper end and arranged beneath said longitudinal median line thereof.

An examination of the prior art satisfies us that the only change which the appellants have made was to change the rounded form of the top of the wardrobe trunk to a gabled form. In doing this, we think the inventor has utilized that common knowledge which is all within the capacity of any mechanic, and that what he has accomplished does not rise to the dignity of invention.

The decree is affirmed.