## WALKUP v. INTERBOROUGH RAPID TRANSIT CO.

Circuit Court of Appeals, Second Circuit.
November 1, 1927.

No. 6.

Patents ⟺328—1,379,583, claims 1, 4, for electric car door control system, held not infringed.

Walkup patent, No. 1,379,583, claims 1, 4, for car door control system, which presupposes the presence of the third rail, and includes insulated contact rails outside the train, and means to use a battery or some other source of electric power outside the train to actuate the magnets controlling valves, *held* not infringed; the patent's means of using the outside power, or their equivalents, not being used.

Appeal from the District Court of the United States for the Southern District of New York.

Suit by Samuel Thomas Walkup against the Interborough Rapid Transit Company. From a decree dismissing the bill, plaintiff appeals. Affirmed.

Appeal from a decree of the District Court for the Southern District of New York, dismissing for noninfringement a bill in equity upon claims 1 and 4 of patent, 1,-379,583, issued to the plaintiff for improvements in car door control.

The patent was for a control system to open and close the doors of subways and elevated railway cars. These had long been moved by pneumatic and mechanical devices, which were set in motion by valves normally shutting off the source of power. In the patented system these valves were under the control of magnets, which were in their turn actuated by the current of an electrical circuit. This circuit included a series of insulated contact rails outside the train, and additional to the third rail, a wheel upon each car to contact with its appropriate rail, and a grounded circuit within the car. Beyond the rail the circuit passed through a battery, or "other source of power," and thence to a switch upon the station platform, whence it also passed to the ground.

A person, standing at the switch upon the station platform, by closing the circuit when the cars had been brought into contact with their proper rails, could energize the magnets and move the valves. The doors of one car, or of several simultaneously, could be moved by proper connections. The contact rails were insulated from each other, one for each car, and each car must be stopped beneath a rail, or its doors would not open or close.

The claims in suit, Nos. 1 and 4, read as follows:

"1. In a car door control system for trains, a contact rail adjacent which a car is adapted to come to rest, car door operating means, means for electrically controlling said car door operating means, including a contact member on the car adapted to engage the said rail, and a hand switch adapted for mounting on a stationary part independent of the car."

"4. In a car door control system for trains, a series of contact rails adjacent which the cars are adapted to come to rest, electrically controlled car door operating means, and a hand switch adapted for mounting on a part independent of the train and controlling the car door operating means of the different cars."

The alleged infringement was of a system similar in its general character, except for the following details. The plaintiff contended that the current to actuate the magnets was taken directly from the third rail and was the same as that which drove the motors in the cars. It was carried through the cars and grounded thereafter, but, as its voltage was too high for safety, it had to be stepped down, which was variously accomplished. The defendant contended that the current was not taken directly from the third rail, but from a storage battery placed in the circuit in each car. This issue is not resolved in the following discussion, which assumes, without deciding, that the plaintiff's contention in this respect is correct. The switches were on the cars, not on the platform; there were no separate contact rails, beneath which the cars had to be stopped, and no contact wheels or shoes on the cars.

Pennie, Davis, Marvin & Edmonds, of New York City (W. B. Morton and E. H. Merchant, both of New York City, of counsel), for appellant.

Darby & Darby, of New York City (Samuel E. Darby, Jr., of New York City, of counsel), for appellee.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

L. HAND, Circuit Judge (after stating the facts as above). It is very plain that the phrase in claim 1, "a hand switch adapted for mounting on a stationary

part independent of the car," refers to that part of the disclosure (page 1, lines 19–26; page 2, lines 31–36), which describes the switches as situated on the station platform, where the patentee' intended them to be. The same is true of the phrase in claim 4, "a hand switch adapted for mounting on a part independent of the train." Concededly the defendant has no part of its system on the station platform, and can open its doors wherever it may be on its tracks. Verbally the claims are therefore not infringed. Nevertheless, if all that the defendant had done was to move the switches away from the platforms and to put them on the train, we should hesitate for so verbal a reason to excuse a substantial appropriation of the invention.

The substantial difficulty lies deeper. The patent means to use a battery, or "some other source of power," outside the train to actuate the magnets. That source of power is in a circuit which the car must close, and which in practice it does close, when, and only when, its contact wheel or shoe touches the contact rail, *21*. All this is quite additional to the third rail and its contact shoes. That was presupposed, because the system was designed for subways and elevated trains. Thus the patentee did not mean to use the current directly from the third rail; on the contrary, he wholly eschewed its use, and set up a supplementary circuit, in part outside the train. So far as this circuit depends upon a battery, it is clearly quite another system. So far as, by the phrase "some other source of power,". the claim may include current taken indirectly from the third rail, the means by which this is to be accomplished is left to the imagination. We will not say, however, had the defendant drawn into a circuit, constructed after the patent, current from the third rail, that this would not have been an infringement. Somewhere a transformer would have been necessary, but perhaps that should be assumed as familiar enough to the art. But, when so constructed, the added contact rail and shoe could still have been present, and the system would have been as little like the alleged infringement as though the power came from a battery.

The plaintiff, therefore, must aver, as he does, that he may ignore the added contact rail altogether, relying upon the third rail itself as its equivalent. Thus broadened, his claims require no more than the actuation of the magnets by any current taken from outside the train, and indeed this is all that is common to the two systems. That idea, merely in the abstract, was of course not patentable; some means had to be disclosed for its embodiment. The means disclosed in a specification may indeed be only as illustration of the invention, not a constituent part of it; but it is exactly the office of the claim to distinguish between illustrative and constituent elements. Even under the doctrine of equivalents, the supposed infringement must contain at least some analogue of each feature of the claim. Black Diamond Coal Mining Co. v. Excelsior Coal Co., 156 U. S. 611, 15 S. Ct. 482, 39 L. Ed. 553; Mallon v. Gregg, 137 F. 68 (C. C. A. 8); Stockham v. Duncan, 226 F. 740 (C. C. A. 7).

In the case at bar the plaintiff must therefore maintain that, because the defendant has used the third rail for the same function as his contact rail, *21*, it. is its equivalent. That means, since, as we have said, the patent presupposed the presence of the third rail, that the claim is infringed by omitting altogether the only means claimed, and substituting another element of the same disclosure, which, though present, the patentee had chosen to reject. We cannot play fast and loose in this way with claims allowed by the Office. It is quite true that primal patents of great use and revolutionary novelty we interpret with generous latitude, despite even the language of the claims. But there is no warrant for any such treatment here. The mere idea of using an outside source of power to move the magnets required no signal inventive skill; whatever there was lay in the means by which that idea was realized. To infringe, one must make use of those means, not ignore them in toto. The defendant has taken for the head of the corner the stone which the plaintiff rejected; in so doing it has developed a simple system, available at any part of its track, unitary and self-contained. This it has done without making any use of the cumbersome system, impracticable, because available only at stations, which the patent discloses.

Decree affirmed.