## FRAVER v. STUDEBAKER CORP.

### Civ. A. No. 7828.

United States District Court
W. D. Pennsylvania.

May 1, 1953.

See also D.C., 11 F.R.D. 94.

William J. Ruano, Pittsburgh, Pa., for plaintiff.

William H. Eckert (of Smith, Buchanan, Ingersoll, Rodewald & Eckert), Pittsburgh, Pa., William H. Webb (of Webb, Mackey & Burden), Pittsburgh, Pa., John A. Dienner, and Edward C. Grelle (of Brown, Jackson, Boettcher & Dienner), Chicago, Ill., of counsel, for defendant.

MARSH, District Judge.

Ivan N. Fraver instituted this action against The Studebaker Corporation for the alleged infringement of Patent No. 1,903,037, filed August 14, 1931, and issued on March 28, 1933.[1] The plaintiff limited his proof of infringement to claims 1, 2 and 3 of said patent. Invalidity and noninfringement were the principal defenses.

Interrogatories were submitted to the jury in order to aid them in formulating a general verdict. The jury in answer to the interrogatories found that the three claims were valid and that claim 1 was infringed, but that claims 2 and 3 were not infringed. A general verdict in the sum of $79,250 was returned in favor of the plaintiff and judgment was entered on the verdict. A motion by the defendant at the trial for a directed verdict was refused and it subsequently filed a motion to set aside the verdict and to enter judgment in its favor. We are of the opinion that this motion should be granted. Cf. Packwood v. Briggs & Stratton Corp., 3 Cir., 1952, 195 F.2d 971; Ryan Distributing Corporation v. Caley, 3 Cir., 1945, 147 F.2d 138; Fischer & Porter Co. v. Brooks Rotameter Co., D.C.E.D.Pa.1952, 107 F.Supp. 1010.

The device in suit is an improvement patent designed to ventilate, cool and heat the seats and passenger compartments of motor-driven cars such as automobiles, busses, motor-boats and aircraft. From the verdict it was apparently determined that the heating and certain other features embodied in claims 2 and 3 were not infringed by the accused structure. It is hardly open to question but that the patent is a combination of old elements,[2] and, under the decisions, must be carefully scrutinized to determine whether it is a combination which produces a new and unusual result or is simply an aggregation: Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 1950, 340 U.S. 147, 71 S. Ct. 127, 95 L.Ed. 162.

Claim 1 is as follows:

"In combination with a motor-driven car having a cowl, an upholstered seat and supporting means for said seat forming therewith a chamber, said cowl being provided with an air admission opening and a vane for directing air into said opening; an air conducting pipe having an air inlet end positioned to receive air entering through said opening, said pipe extending downwardly from said inlet end, rearwardly under the floor of the car and upwardly into said chamber."

---

1. Suit was originally instituted under 35 U.S.C.A. § 70 (now 35 U.S.C.A. §§ 283–286, 290), and plaintiff requested injunctive relief as well as damages. Upon expiration of the patent in 1950, plaintiff amended his complaint so as to bring it under 35 U.S.C.A. § 67 (now 35 U.S. C.A. §§ 281, 284). He demanded a jury trial.

2. See Pickwick bus in the July, 1927 issue of "Autobody," and patents to Cook, No. 1,091,733 (1914); Cooke, No. 1,024,439 (1912); Crowther, No. 729,282 (1903); Josephs, No. 1,440,781 (1923); Swartwout, No. 1,643,966 (1927); British Lintern, No. 295,346 (1928); Young, No. 1,825,036 filed 1929, issued 1931. Patent to Lyon, No. 1,425,028 (1922), illustrates an air deflector similar to Fraver's deflector.

Other prior patents which embody the idea of ventilating automobiles with atmospheric air are: Schons, No. 1,507,896 (1924); Metcalf, No. 1,514,329 (1924); Duerk, No. 1,751,686 (1930); Alkire, No. 1,439,681 (1922); Williams, No. 1,475,912 (1923), and Roemer, No. 1,568,471 (1926).

Plaintiff contends that a broad construction should be given to the "chamber." He argues that it was designed so that the incoming air would escape into the interior of the car from under the seat cushion as well as through the upholstery covering the seat cushion. He urges that the supporting means for said seat were not intended to be airtight. He contends that when his patent is thus interpreted the defendant's accused structure, the "Climatizer," is an equivalent and infringes.

At the trial the court did not agree with plaintiff's interpretation, but even if it were accepted, we feel required to conclude that the claim and every component thereof was substantially anticipated and obvious to one skilled in the art.

The combination of all the major elements in plaintiff's structure is to be found in patents to Cook, Cooke, Crowther and the Pickwick bus (see footnote 2). These exhibits demonstrate the collection of atmospheric air into an inlet opening and conducting it into an unenclosed space under the seats,[3] from where in various ways it escapes into the interior of the vehicle. Those elements or their equivalents are plainly present in both of the structures in litigation. The only noticeable variation is that the space under Fraver's seats is enclosed by the floor, seat cushion and the supporting means, the latter (he argues) covered by permeable material; but this variation in the underseat construction could scarcely be considered as a contribution to the art. The prior art demonstrates that by 1933 in order to achieve ventilation of vehicles it was not new or unusual to force the air into the space under the seats of vehicles from where it

was deflected by the under side of the seats into the interior. Thus, we can perceive no novelty in the Fraver chamber even if it were designed so that the air would blow through and under its sides. It is true that the prior art last mentioned is disclosed on street cars[4] and a bus, but adapting old and well-known devices or combinations to new uses, i. e., to an automobile, does not establish validity: see Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., supra; Cuno Engineering Corp. v. Automatic Devices Corp., 1941, 314 U.S. 84, 62 S.Ct. 37, 86 L.Ed. 58; Packwood v. Briggs & Stratton Corp., supra; Ryan Distributing Corporation v. Caley, supra; Stanley Works v. Rockwell Manufacturing Co., 3 Cir., 1953, 203 F.2d 846.

Therefore, when we scrutinize the patent broadly as plaintiff would have it done, it is evident in the light of the prior disclosures, that the standards of invention were not met and that his patent was anticipated, lacks novelty, and, in 1933, was obvious to those skilled in the art.

At the trial the defendant contended and the court agreed that a limited construction should be given to the "chamber" mentioned in the claims. Admittedly the patent in suit was not a primary one and from the uncontradicted evidence it appeared that it had never been manufactured and sold commercially. In the specifications it is stated: "The air escapes from the chambers by passing through the paddings and coverings of the seats and backs if said coverings be of fabric, but if materials impervious to air passage be employed, other provision may of course be made for allowing the escape of air."[5] Despite plain-

---

3. Although not beyond doubt, it appears to us that the space under the seat shown in the Cooke patent was intended to be enclosed with the air deflected, by the under side of the seat, through an outlet into the interior of the car.

4. The Cook and Cooke patents indicate they are applicable to passenger cars generally.

5. Specifications, page 1, lines 84–90. Other parts of the specifications state: "One object of the invention is to pro-

vide novel means for so discharging air into the seat upholstery of the car as to either cool or heat the seats. * * *" Page 1, lines 10–13.

"Another aim is to make novel provision whereby the air to be discharged into the seat upholstery will be directed into the car. * * *" Page 1, lines 15–17.

"A further object is to provide novel means whereby heated air and relatively cool air may be mixed in any required proportions and conducted into the seat upholstery to obtain the most desirable

tiff's strenuous objections, we thought this language, read in the light of the drawing and specifications as a whole, implied that openings would be made in the upholstery and paddings of the seat if the materials were impervious. This view is corroborated by the fact that the arrows in the drawing suggest that the air was to percolate into the interior of the car through the coverings of the cushions and backs of the seats. Acting on these considerations the court construed the chamber to be relatively airtight (cf. Continental Paper Bag Co. v. Eastern Paper Bag Co., 1908, 210 U. S. 405, 28 S.Ct. 748, 52 L.Ed. 1122; Etten v. Kauffman, 3 Cir., 1941, 121 F.2d 137; Gardiner v. Freed Heater & Mfg. Co., 3 Cir., 1939, 107 F.2d 364; Roberts v. General Electric Co., 3 Cir., 1936, 85 F.2d 964), and that the claims contemplated a ventilating device for cooling and heating the seat cushions as well as the passenger section of a motor-car by collecting atmospheric air and forcing it through a sufficiently airtight chamber and into and through the seat upholstery.

If Fraver intended to make his chamber relatively airtight, as the court charged, in doing so he merely substituted another old segment of prior art in place of an unenclosed space or a loosely constructed permeable chamber. It is undenied that the principle of forcing atmospheric air into and through upholstered seat cushions used in motor-cars and the like, by way of a chamber or air-conducting passage, an air admission opening, and vane for directing air into said opening, was disclosed in the prior patents to Roemer, No. 1,568,471 (1926); French patent to Beucher, No. 429,326 (1911); Alkire, No. 1,439,681 (1922); and Williams, No. 1,475,912 (1923).

.Although not expressed to the jury at the trial, we were then and are now of the opinion that even under the restrictive interpretation given to the chamber the patent is still a mere aggregation of old parts or elements. As indicated in the celebrated A. & P. case, the combination of old parts shown in plaintiff's device, if sustained as a patent, would have the effect of subtracting from "former resources freely available to skilled artisans" [340 U.S. 147, 71 S.Ct. 130] in the vehicle ventilating field. We cannot perceive that any of the functions of these elements so employed are changed by the plaintiff's combination whether it is construed broadly or limitedly, but, on the contrary, each appears to operate as it always did in the prior art and with no new result. The patent in suit discloses simply a nonpatentable aggregation, with unimportant changes, of elements long since disclosed in prior patents. When these elements in the aggregate perform or produce no new or different function or operation than that theretofore performed or produced by them and with no other result than the sum of the results produced by each of the combined elements the patent is invalid. A. & P. case, supra.

Thus, when plaintiff's combination patent is scrutinized under the strict construction, it continues to appear that no distinct contribution has been made in the art of car ventilating and that no new or unusual result or invention has been shown. Therefore, as a matter of law, the verdict based on that construction should be set aside.

██ But assuming, as the jury found, that the patent as strictly construed by the court was valid, we believe it would still be necessary to enter judgment n. o. v. for

seat temperature for the comfort of the occupants." Page 1, lines 23–28.

"All of the air forced into this pipe, of course, finds its way through the upholstery of the seats, producing the desired cooling and ventilating action, or heating and ventilating action, as occasion may demand." Page 2, lines 61–65.

"As long as the car is in motion * * *, the comparatively cool air * * * enters the pipe * * * effec-

tively cooling the seats." Page 2, lines 66–70.

"When the car is standing still, relatively cool air may be taken in through * * * the blower casing * * * and forced on into the seat upholstery. * * *" Page 2, lines 71–74.

"In comparatively cold weather * * * the heated air is conducted on rearwardly into the seat upholstery." Page 2, lines 75–80.

the defendant for the reason that the evidence does not warrant a verdict of infringement. See Black Diamond Coal Mining Co. v. Excelsior Coal Co., 1895, 156 U.S. 611, 15 S.Ct. 482, 39 L.Ed. 553; Singer Mfg. Co. v. Cramer, 1904, 192 U.S. 265, 24 S.Ct. 291, 48 L.Ed. 437; Ryan Distributing Corp. v. Caley, 147 F.2d 138, supra; Western Electric Co. v. Robertson, 2 Cir., 1905, 142 F. 471; Hurin v. Electric Vacuum Cleaner Co., 6 Cir., 1924, 298 F. 76; McRoskey v. Braun Mattress Co., 9 Cir., 1939, 107 F.2d 143; Fischer & Porter Co. v. Brooks Rotameter Co., 107 F.Supp. 1010, supra. The principle to be gathered from these cases is that where the credibility of witnesses is not involved, the meaning of scientific terms is not in substantial dispute, and the evidence on infringement is not conflicting, except in the interpretive sense, the question of infringement, even though one of fact, is for the court and not for the jury. We think such a case is presented here.

When the accused structure is examined in the light of the exhibits and evidence it cannot reasonably be asserted that even a slight amount of air escapes through the paddings and coverings of its seat, and the undisputed evidence shows that the bulk of air is deliberately deflected forwardly and rearwardly through the openings between the bottom of the front seat and the floor.

It is thus obvious that the patent in suit and the accused structure disclose two fundamentally different systems of discharging air into a motor vehicle, i. e., through the upholsterly of the cushion as distinguished from under the seat near the floor. One of the tests of equivalency is "substantial identity of way of performing" a function, here, ventilating a car. Walker on Patents, Deller's Ed., Vol. 3, § 466. "Function must be performed in substantially the same way by an alleged equivalent, as by the thing of which it is alleged to be an equivalent, in order to constitute it such." Id., § 468. The verdict of infringement should not stand because of this material variance in performance.

More important, perhaps, is the fact that the accused structure does not involve an enclosed chamber, relatively airtight, as we have construed plaintiff's structure, in order to force the air into and through the upholstery of the seat. On the contrary, the "Climatizer" omits the "chamber" taught by Fraver and is constructed so that the air does not enter the interior of the car by passing through the seat upholstery, but does so by flowing out through the openings which surround the bottom of the seat between the seat and the car floor.

"The law is well settled that when the accused structure omits an essential element of a patent, without the substitution of an equivalent, operating substantially in the same way to achieve practically the same result, there is no infringement." Kay Patents Corp. v. Martin Supply Co., 4 Cir., 1953, 202 F.2d 47, 51. Plaintiff's "chamber," as we construe it, is a material part of his claim, and since no substantially airtight "chamber" or its equivalent is embodied in the accused structure, there is no infringement. Gardiner v. Freed Heater & Mfg. Co., 107 F.2d 364, supra. When we keep in mind that Fraver's device is simply an improvement patent, the doctrine of equivalents cannot thus expand plaintiff's claim to cover the accused "Climatizer," which omits the "chamber,"—the distinguishing element of plaintiff's patent. See page 415 of 210 U. S., 28 S.Ct. 748 of the Paper Bag Patent case, supra. As was said in Etten v. Kauffman, supra, 121 F.2d at page 140, "The range of equivalents, which a patentee has, can in no event be more than commensurate with the scope of his invention."

Summarizing, the court is of the opinion that the patent in suit is invalid, whether construed broadly or limitedly; if when limitedly construed it were deemed valid, as the jury found, then, as a matter of law, claim 1 thereof would not be infringed by the accused structure.

An order will be drawn vacating judgment in favor of the plaintiff and entering judgment in favor of the defendant.